CHARLES C. PAGE v. NICHOLAS KRESS AND ARRENA KRESS.

*Mortgage foreclosure—Resale of premises.*

1. A resale will not be ordered in a foreclosure case upon an offer of increased price alone, when the property has not been sold at a sacrifice.

    So *held*, where the only reason for ordering such a resale was that a person present at the sale was willing to pay $110 more than was offered at such sale, and the consequent benefit to the mortgagor, who was entitled to the surplus.

2. The following general propositions are summarized from the opinion of Chief Justice CHAMPLIN:

    *a*—The practice of the English court of chancery, which is to open biddings before confirmation when an offer is made of an advance of 10 per cent. on the bid, and an indemnity to the purchaser, has not been adopted in this State.

    *b*—When property is exposed for sale under a judicial decree, and offered to the highest bidder, and the sale is without fraud, and is fairly conducted, after proper notice, and the property is struck off to a third person, it will require a strong case, and some peculiar exigency, to warrant a court in setting it aside.

    *c*—If an interested party is not barred by laches, a resale will be ordered where there has been fraud or misconduct in the purchaser; fraudulent neglect or misconduct on the part of other persons connected with the sale; or surprise or misapprehension, not attributable to the party's own fault, created by the conduct of the purchaser, or of some person interested in the sale, or of the officer who conducted such sale.

Appeal from Jackson. (Peck, J.) Argued January 21, 1890. Decided April 11, 1890.

Foreclosure case. Appeal from order setting aside a sale, and ordering a resale of the mortgaged premises. Order vacated, as also all subsequent proceedings thereunder. The facts are stated in the opinion.

*J. C. & C. B. Wood,* for complainant.

*Dwight D. Root,* for defendants.

CHAMPLIN, C. J. At a sale, made pursuant to a decree of foreclosure of a mortgage, held on March 5, 1888, there were two bidders. One was William Stimer, bidding in his own behalf; and the other was C. B. Wood, who was bidding in behalf of Catherine Vedder. Wood bid $885, and afterwards Stimer bid $890; and the premises were struck off to him and his brother, Wyman Stimer, and the commissioner's deed was duly executed to them.

Several by-standers have made affidavit that, when Wood bid $885, Stimer said: "That is enough; you can have it,"—and that the commissioner then said: "Sold." But Mr. Wood, in his affidavit, does not say that the commissioner announced it as sold, but inquired for whom he was bidding, and made a memorandum of it. The commissioner makes affidavit that he did not strike off the premises to Wood, but says he made a memorandum of his bid; that Wood immediately left and went back into the court-room. It appears that he was in attendance upon the court, and had obtained leave of absence for a few minutes to attend this sale. The commissioner says that Wood and Harry Allen, who was also present at the sale, appeared to be acting in concert, and, before he announced the biddings closed, he inquired of Allen if he represented Wood, as, if he did not, he wished to send for Wood; that he understood Allen to say that he represented Wood, and that he would not raise Stimer's bid, which had been made after Wood left, of $890,—and he therefore struck off the premises to Stimer. Allen denies stating that he represented Wood, and states that he told the commissioner that he did not represent him; but he has made another affidavit in

which he states that he was then and there ready to pay the money on Wood's bid, which shows that he had some relation to the real bidder.

There was nothing which occurred at the sale which would induce a court of equity to set it aside. The prem-- ises were finally struck off to Stimer as the highest bidder. More than this, the Wood who made the bid was one of the members of the firm of J. C. & C. B. Wood, who were the solicitors for complainant, and who, on the next day after the sale to Stimer, entered the usual order *nisi* to confirm the sale. This order was entered on March 6, 1888.

On March 13, Catherine Vedder filed a petition to set aside the sale, and for a resale, saying that she would have bidden $100 or $200 more if the premises had not been struck off in the absence of Mr. Wood. It must be remembered that in the meantime, and on the day of sale, Stimer had paid to the commissioner the amount of his bid, and it had been disbursed in accordance with the decree. To enable him to pay the purchase money, he had mortgaged the premises purchased by him at the sale, for $500, to one Powers, and had raised the balance by mortgage or sale of his personal property. The petition of Catherine Vedder was supported by several affidavits, before referred to, with reference to what took place at the sale.

It appears that the court, on July 2, 1888, made an order that the sale on March 5, 1888, be set aside on condition that the petitioner make due service of the petition on all parties interested who had not appeared, and upon petitioner's filing a bond, with sufficient surety, that there would be bid upon the premises a sum of money not less than $1,050 at any resale the commissioner might thereafter make,—said bond also to indemnify John

Powers, mortgagee of said premises, against any damage he might sustain, and also indemnify the purchaser at the sale before then made against any damage he might sustain; and upon the filing and approval of the bond the commissioner was ordered to immediately thereafter make a resale of the premises.

Nicholas Kress petitioned the court to modify the order so as to permit a resale if a bid was offered of $1,000, representing that he could find no one to enter into a bond conditioned to bid $1,050, but that Harry Allen had promised to enter into a bond with him conditioned to bid $1,000; and he annexed the affidavit of Harry Allen to that effect. The court modified the order; and thereupon the bond was filed, and a resale had, and the premises were struck off to Harry Allen for $1,000. Afterwards, on a showing that the parties interested had not been notified, this sale was set aside, and notices ordered to be served, when another order, upon hearing, was had, and a resale ordered, and the premises, on such resale, were struck off again to Harry Allen for $1,000; he being the only bidder at both resales. This is the same Harry Allen who was present at the first sale, and who had the money with which to pay Wood's bid, and who refused to raise Stimer's bid, at that sale.

No sufficient reason is shown why the sale made on the 5th of March, which was fair and open, should be set aside to enable Mr. Allen, who was present at that sale, to raise the bid to $1,000. The only showing as to value is the affidavits of Stimer and Fisk, which show that the fair value of the premises does not exceed $900. It cannot be urged that the price at which it was sold to Stimer was inadequate, or that it was sold at a sacrifice.

A resale will not be ordered upon an offer of increase of price alone, when the property has not been sold at a

sacrifice. The practice of the English court of chancery, which is to open biddings before confirmation when an offer is made of an advance of 10 per cent. on the bid, and an indemnity to the purchaser, has not been adopted in this State. Special circumstances, appealing to equitable considerations, must always exist, where the sale is not void, to justify an order for a resale. Where a party interested has not been barred by laches, a resale will be ordered where there has been fraud or misconduct in the purchaser; fraudulent negligence or misconduct in other persons connected with the sale; surprise or misapprehension, not attributable to the party's own fault, created by the conduct of the purchaser, or of some person interested in the sale, or of the officer who conducts the sale. None of these elements exist in this case. The only reason for ordering a resale is that Allen was willing to pay $110 more than was offered at a public sale at which Allen was present, and the consequential benefit to the mortgagor, who is entitled to the surplus. If this is a sufficient reason, a resale may be ordered in nearly every case of a judicial sale, the direct tendency of which would be to destroy the confidence of bidders at such sales, and prevent bidding; thus affecting the price at which the property will sell for. When property is exposed for sale under a judicial decree, and offered to the highest bidder, and the sale is without fraud, and is fairly conducted, after proper notice, and is struck off to a third person, it will require a strong case, and some peculiar exigency, to warrant a court in setting it aside.

We think the order setting aside the sale made on March 5, 1888, to William Stimer and Wyman Stimer should be vacated, set aside, and held for naught, and also all subsequent orders for resale, and sales and deeds made in pursuance thereof, should be vacated, set aside, and held for naught; and it will be so decreed. William

Stimer and Wyman Stimer will recover their costs of this Court against Nicholas Kress and Harry Allen.

MORSE, LONG, and GRANT, JJ., concurred.