GEORGE *v.* NORWOOD.

Opinion delivered December 2, 1905.

1.  JUDICIAL SALE—REOPENING FOR ADVANCED BID.—A judicial sale, in the absence of fraud, irregularity or misconduct affecting its validity, will not be set aside and confirmation refused in order to allow the bid of the purchaser to be advanced by another person. (Page 218.)

2.  SAME—INADEQUACY OF PRICE.—Mere inadequacy of price is not ground for setting aside a judicial sale unless it be so gross as to shock the conscience or raise a presumption of fraud or unfairness. (Page 218.)

3.  APPEAL—CHANCELLOR'S FINDING.—A chancellor's finding will not be sustained on appeal if it is contrary to the decided preponderance of the evidence. (Page 219.)

4.  JUDICIAL SALE—DISCRETION OF COURT.—While the accepted bidder at a judicial sale acquires no independent rights until the sale is confirmed by the court, and while the court may exercise discretion in confirming or rejecting the sale, the discretion must be exercised according to fixed rules, and not arbitrarily, and the bidder has the right to insist upon its exercise in this manner only. (Page 219.)

Appeal from Ashley Chancery Court; MARCUS L. HAWKINS, Chancellor; reversed.

*George & Butler* and *Robt. E. Craig,* for appellant.

1.  The court will sustain the sale, in the absence of affirmative proof that it was fraudulent, unfair or prejudicial to the defendant or contemplated purchaser. 99 Am. Dec. 461; 61 *Ib.* 134; Jones on Mort. § 1676.

2.  It is the policy of the law to uphold judicial sales. 145 U. S. 349; 61 Am. Dec. 134; Jones on Real Mortgages, § 1676. When the sale is fairly conducted, after proper notice, and is struck off to a third person, it will require a strong case and some peculiar exigency to warrant a court in setting it aside. 80 Mich. 85. Had purchaser refused or failed to make good his bid,

the court by order could have compelled compliance therewith. 36 Ark. 605; 94 Va. 250; 106 Ga. 102; 41 W. Va. 339.

3. Mere inadequacy of price is not sufficient to justify setting aside the sale. 13 Grat. (Va.) 437; 44 Ark. 502; 2 Swan, 492; 99 Am. Dec. 132; 5 Hump. 352; 7 *Ib.* 281; 3 Sneed, 200. Neither will such sale be set aside for an advance upon the price. 36 Am. Dec. 415; 80 Mich. 85; 20 Ark. 652; 65 Ark. 152.

*Hooker & Cone,* for appellees.

1. There was no abuse of discretion on the part of the chancellor, and this court will not interfere with his action. 10 Ark. 428; 5 Ark. 208; 21 Ark. 329; 33 Ark. 838.

2. The commissioner is the agent of the court, the whole proceeding under its control, and the court may confirm or reject a reported sale as the law or justice may require. 20 Ark. 661; 23 Ark. 39; 32 Ark. 391; 34 Ark. 346; 49 Ark. 67; 53 Ark. 110; 55 Ark. 307; 53 Ark. 445; 59 Ark. 5.

3. Where the inadequacy of price is so great as to shock the conscience, the court will set aside the sale.

4. Until the sale is confirmed and deed executed by the commissioner to the purchaser, and the deed confirmed, no title passed, and no rights of property accrued to the purchaser. 34 Ark. 346; 55 Ark. 307.

McCULLOCH, J. Appellant, G. P. George, Jr., became the purchaser of land at a sale made by commissioner in chancery, and appeals from a decretal order of the court setting aside the sale and refusing to confirm it.

The land was advertised and exposed to sale by the commissioner in accordance with the decree of court. Appellant bid the sum of $4,000 therefor, and, being the highest bidder, the commissioner knocked the same off to him at that price, and reported the sale to the court. One of the parties to the suit filed exceptions to the report on the alleged ground that the price was grossly inadequate, and appellee W. T. Cone offered an advance bid of $5,000 for the land. The court made a finding that the price for which the land was sold, $4,000, was grossly inadequate, offered to permit appellant to advance his bid to $5,000, which appellant refused to do, and then set the sale to appellant aside, and accepted the bid of appellee Cone, and directed the commis-

sioner to make a deed to the latter upon payment of said sum of $5,000.

The fairness and regularity of the sale is unimpeached by evidence. Appellees introduced no proof to establish the market value of the land except the offer of appellee Cone to pay $5,000 for it, and appellant introduced four witnesses who testified that the fair market value of the land at the time of the sale was $3,500 to $4,000.

The questions which we are called upon to decide are, in the first place, whether an appellate court should under any circumstances disturb the order of a chancery court refusing to confirm a sale by its commissioner, and, second, whether the chancellor is sustained by the evidence in his conclusion that the price offered by appellant was grossly inadequate.

In the case of *Colonial & U. S. Mortgage Co.* v. *Sweet*, 65 Ark. 152, this court affirmed the order of the chancellor confirming a sale of land for $2,500 and refusing to accept an advance bid of $3,981.67 made by one of the parties to the original decree. The proof was conflicting as to the market value, and the court found that the price at which the sale was made, $2,500, was a fair one. The court quoted with approval language of the Supreme Court of the United States in *Graffam* v. *Burgess*, 117 U. S. 180, as follows:

"In this country, Lord Eldon's views were adopted at an early day by the courts, and the rule has become almost universal that a sale will not be set aside for inadequacy of price, or unless the inadequacy be so great as to shock the conscience, unless there be additional circumstances against its fairness; being very much the rule that always prevailed in England as to setting aside sales after the master's report had been confirmed."

It may be therefore treated as settled in this State, following the rule adopted by a large majority of the American courts, that, in the absence of fraud, irregularity or misconduct affecting the validity of a judicial sale, the sale will not be set aside and confirmation refused in order to allow the bid of the purchaser to be advanced by another person.

It is equally well settled, here and elsewhere, that a judicial sale will not be set aside on account of mere inadequacy of price, unless the inadequacy be so gross as to shock the conscience or

raise a presumption of fraud or unfairness. *Nix v. Draughon,*
56 Ark. 240; *Fry* v. *Street,* 44 Ark. 502; *Brittin* v. *Handy,* 20
Ark. 381; *Graffam v. Burgess,* 117 U. S. 180; *Parker* v. *Bluffton
Car Wheel Co.,* 108 Ala. 140; *Stump* v. *Martin,* 9 Bush (Ky.),
285; *Allen* v. *Martin,* 61 Miss. 78.

The chancellor found in this case that the price was grossly
inadequate, but his finding was contrary to the decided preponder-
ance of the evidence. Four witnesses introduced by appellant
testified that the amount of his bid was a fair market value of
the land. Some of them testified that it was above the market
value. No other witness testified on the subject. But, conced-
ing that the advance bid of appellee Cone fixed the value of the
land at $5,000, we do not think that establishes such gross inade-
quacy in the price as, of itself, to afford grounds for setting aside
the sale.

Courts have adopted, as a wise public policy, the rule that
confidence in the stability of judicial sales should be maintained,
so that competitive bidding may be encouraged by the assurance
that, in the absence of fraud or misconduct, the highest bidder
will be accepted as the purchaser of the property offered for sale.
And, while it is often said that the accepted bidder at such a sale
acquires no independent rights until the sale be confirmed by the
court, and that the court may exercise a discretion in either con-
firming or rejecting the sale, yet this discretion must be exercised
according to fixed rules, and not arbitrarily, and the bidder has
the right to insist upon its exercise in this manner only. He
can insist that his purchase be not set aside by the court upon
reasons which are condemned.

"Considerations of public policy demand," say the Court of
Appeals of Kentucky, "that some confidence should be had in the
stability of judicial sales, so as to invite competition in bidders
by an assurance to men of fidelity and promptness in their busi-
ness habits that the chancellor is at least bound by the same rules
of fair dealing that such men are in their business transactions
with each other." *Stump* v. *Martin, supra.* And the appellate
court in that case reversed the decision of the lower court refus-
ing to confirm a sale and accepting the advanced bid of another
person.

In a similar case, the Supreme Court of Mississippi, on

appeal prosecuted by the purchaser, reversed the ruling of the chancellor refusing to confirm a sale because the bid had been advanced. *Allen* v. *Martin, supra.* The court, by Mr. Justice Cooper, said: "Until confirmation, the sale is *in fieri* and subject to the control of the court, but this control is a judicial, not an arbitrary, one, and confirmation must follow unless there exist some reason recognized by law as warranting a refusal to confirm. A bidder at a sale in chancery assumes certain obligations which he must discharge, he submits himself to the jurisdiction of the court, and becomes a party to the cause in which the sale has been decreed, and he may be compelled to stand by the offer he has made. On the other hand, he acquires certain legal rights which are to be as much protected and enforced as are other rights of other persons. He is entitled not only to ask but to have confirmation if there is no reason valid in the law for refusal."

"When a sale is made in all respects according to the terms of the decree, and neither fraud, mistake nor misrepresentation can be alleged against it, the faith of the court is pledged to ratify and perfect it." *Latrobe* v. *Herbert,* 3 Md. Chan. 377.

The New Jersey Court of Errors and Appeals, in the case of *Morrisse* v. *Inglis,* 46 N. J. Eq. 306, reversed the decree of the chancellor setting aside a sale made by the master because the bid of the purchaser was advanced by another. The court said: "There is a uniform current of decisions settling that official sales will not be opened on mere representations that more may be obtained for the property. This well-known practice is in accord with the policy of our law respecting such sales, which are required to be made after advertisement sufficient to give publicity by public outcry to the highest bidder. It is of the greatest importance to encourage bidding by giving to every bidder the benefit of bids made in good faith and without collusion or misconduct, and, at least, when the price offered is not unconscionably below the market value of the property. Nothing could more evidently tend to discourage and prevent bidding than a judicial determination that such a bidder may be deprived of the advantage of his accepted bid, whenever any person is willing to give a larger price. The interest of owners in particular cases must give way to the maintenance of a practice which, in general, is in the highest degree beneficial." To the same effect are *Comstock* v.

*Purple,* 49 Ill. 158; *Quigley* v. *Breckenridge,* 180 Ill. 627; *Page* v. *Kress,* 80 Mich. 85.

If the chancellor had, under the proof, approved this sale, our duty to affirm his decision would be plain, for it is undisputed that the sale was regularly made in accordance with the order of the court, and was free from any fraud or misconduct, and the evidence shows that the price bid was not inadequate.

That being true, the purchaser had the right to insist upon a confirmation of the sale, and it is equally our duty to protect that right and to reverse a decision of the chancellor denying it. In other words, the decision refusing to confirm the sale under the proof presented by the record can not be said to be proper exercise of the discretion of the court, and must be reversed.

The decree is therefore reversed, and the cause remanded, with directions to confirm the sale to appellant upon compliance by him with the terms of his bid.