CULVER LUMBER & MANUFACTURING COMPANY *v.* CULVER.

Opinion delivered December 10, 1906.

1. CORPORATION—CONTROL.—One who owns a majority of the shares in the stock of a corporation is entitled to control its business. (Page 113.)

2. SAME—WHEN RECEIVER APPOINTED.—Where the officers of a business corporation are recklessly and extravagantly managing its affairs, involving it in debt and converting its property to their own use, equity will interpose and appoint a receiver for the protection of stockholders and creditors. (Page 113.)

3. FOREIGN CORPORATION—CONTROL OF BUSINESS BY COURT.—While courts of equity have no authority to dissolve a foreign corporation, or wind up its business, they may, in case of mismanagement, take charge of its affairs and enforce the rights of stockholders and of creditors who have proved their claims; and where the affairs of the corporation in the State of its domicil have been wound up and the receiver discharged, the assets will not be remitted to that State, but will be disposed of here according to the respective rights of creditors and stockholders. (Page 114.)

4. ACTION—WHEN DISMISSAL NOT PERMITTED.—Where the principal stockholder in a trading corporation applied for a receivership, alleging mismanagement of its affairs by its officers, and the receiver was appointed without objection, and thereafter the principal creditors intervened and asked that the property be sold to pay the corporate debts, which was done without objection, the court will not thereafter permit the plaintiff to take a nonsuit, nor discharge the receiver, since other parties had acquired rights which the plaintiff could not defeat by a dismissal. (Page 114.)

5. JUDICIAL SALE—DISCRETION.—The approval of a judicial sale by the chancellor will not be set aside if no abuse of discretion appears. (Page 114.)

Appeal from Lawrence Chancery Court; *George T. Humphries,* Chancellor; affirmed.

*W. E. Beloate* and *F. G. Taylor,* for appellants.

A chancery court's jurisdiction of any particular case is determined by the allegations of the complaint. Wells on Jur. § 4. Courts of equity have no power to appoint a receiver of a corporation ancillary to a stockholder's suit to wind up its affairs. 5 Tex. Cir. App. 18; 23 S. W. 819; High on Rec. 287-289; Smith on Rec. 220, note 1; Wait on Insol. Corp. 172; 2 Spelling on Corp. 842; 1 Mor. Priv. Corp. 283; 53 Cal. 550. On allegations of fraud, etc., courts of equity will do no more than enjoin or forbid the misconduct. 34 S. W. 832; High on Rec. 288; Mor. Priv. Corp. 281; 30 Ia. 167; 68 Fed. 675; 98 Ga. 176.

In the absence of statutory authority, courts of equity have no jurisdiction, upon the application of an insolvent corporation, to take charge of and administer its affairs through a receiver. 10 Colo. 495; 32 Pac. 322; Chase, Dec. 466; Fed. Case No. 6840; 32 Mich. 11; 16 Cal. 145; 76 Am. Dec. 508; 30 Ia. 160; 43 Miss. 523; 2 Johns. Chy. 371; 2 Atl. 315; Wait on Insolv. Corp. 183; Gluck & Becker, Rec. 27. The facts and circumstances from which insolvency appear must be set out in the bill. 9 N. J. Eq. 95. *Ex parte* appointment of a receiver is absolutely void. Jurisdiction can not be conferred by consent. 3 N. Y. 552. The sale must be between the hours fixed by the statute. 23 Ark. 39; 38 Tex. 157; 4 Green (Ia.), 510. Inadequacy of price and improper notice of sale are sufficient to set the sale aside. 20 Ark. 381; 32 *Id.* 391.

*Morris M. Cohn* and *John W. & Joseph M. Stayton,* for appellees.

Appellants can not take the benefit of the court's jurisdiction and then question it. 53 Ark. 514; 49 *Id.* 318; 45 *Id.* 536; 25 *Id.* 99; 68 *Id.* 460; 56 Fed. 1006; 163 U. S. 160; 25 Ark. 108.

Stockholders are equally estopped with the company. Thomp. on Corp. § § 5246 and 5269 *et seq.* The assets of a corporation stranded and going to pieces are a trust fund. Thomp. on Corp. § 6860; Cook on Corp. § 629; Beale, Foreign Corp. § § 74, 791; 81 So. 694; 107 La. 145; 72 Pac. 733. Chan-

cery courts are given jurisdiction over foreign corporations in this class of cases. Kirby's Digest, § 949; Const. art. 12, sec. 11; 69 Ark. 521; 63 *Id.* 165. After a case has been submitted to a court or jury, plaintiff can not take a nonsuit without prejudice to a future action. 23 Kan. 262; 69 Ark. 431. A corporation is insolvent when its embarrassments are such that early suspension and failure must ensue. 11 So. 350; 15 Fed. 786. Or is unable to pay its debts in the usual course of business. 38 N. E. 1017; 31 Atl. 799.

And insolvency is not necessary to give the court jurisdiction when it appears from other causes that business can not be carried on successfully. 82 Fed. 780.

BATTLE, J. On the 25th of August, 1902, Mary C. Culver instituted this suit against the Culver Lumber & Manufacturing Company in the Lawrence Circuit Court, on the equity side, which was afterwards transferred to the Lawrence Chancery Court, it having been created after the institution of this suit.

Plaintiff alleged in her complaint, substantially, as follows: She is a married woman and a resident of the State of Missouri. The defendant is a corporation, organized under the laws of the State of Missouri. Its capital stock amounts to $300,000, divided into shares of $100 each, of which she owns and holds as her separate estate 1725 shares, which is much more than one-half of the stock. It has been engaged in the business of sawing and manufacturing lumber and the selling of the same, and at the commencement of this suit was so engaged, with its mills at or near Sedgwick, in Lawrence County, in this State. It established, in 1902, in the State of Arkansas a planing mill with expensive machinery and facilities for making and furnishing the trade with all kinds of dressed lumber, sash, doors, mill and finishing work; and in the course of its business acquired considerable property, both real and personal, exceeding in value $500,000, and contracted an indebtedness in about the sum of $250,000. At a meeting of the board of directors, held in January, 1902, H. A. Culver was selected and appointed general manager of the business of the defendant, Elias W. Culver was elected president, Edgar W. Culver, treasurer, and Joe E. Culver, secretary. In March, 1902, the president, secretary and treasurer, without authority from the board of direc-

tors, purchased real estate, and recklessly, extravagantly and unnecessarily expended about $5,000 in building offices, and Edgar W. and Joe E. Culver, respectively, secretary and treasurer, have so extravagantly and recklessly conducted the business of the company that it became largely involved, and by such recklessness and extravagance alarmed the large creditors of the company, and caused them to induce the president to make an agreement in writing in and by which J. H. Jarrett and Frank I. Buckingham, of moderate means, were to be placed without bond, in the absolute charge and control of the entire business of the defendant yielding about $40,000 to $60,000 a month. Such managers are inexperienced in the management of similar business, and, if allowed to control, will in a short time cause great loss to defendant, if it does not render it bankrupt, and will imperil and wreck it financially. They have already taken possession of all the property at Kansas City, Missouri, and Kansas City, Kansas, "and refuse to act or conduct the business of the defendant under the directions or proper orders of its officers and managers, but that, instead, they are arbitrarily refusing to permit its officers, directors and legal managers to have any voice or control in the management of its business, and when its manager has drawn checks to pay for material used in the conduct of its business, they have refused to pay or permit the payment thereof, and are threatening, under and in pursuance of the alleged contract, to take charge of the business and property in the State of Arkansas, and hold and operate the same to the exclusion of the defendant or its board of directors or managing officers." Plaintiff "has requested the board of directors and officers of the defendant to bring suit to set aside said contract and take management of such business again, but they have refused and neglected to do so."

Plaintiff further stated that at the mills of defendant in this State, and elsewhere, "are employed about four hundred persons, and that there is now due to them in small sums, respectively, about $5,000, and that there is due on pay days, twice each month, to said hands about $2,000 or $3,000 each pay day, and that, being a foreign corporation, said sundry individual employees can attach the property of defendant to satisfy their claims and costs incident thereto, and that said proceedings would entail a large

amount of costs and would wreck said property; that the employees and creditors are threatening to attach, and such attachment would cause a large amount of defendant's property to be sacrificed and lost, and that, for the protection of all creditors and the rights of the plaintiff and other stockholders, it is necessary that said property in this State be held intact as a manufacturing plant, at least until the product belonging to the defendant can be manufactured and disposed of;" and that if this is done its debts can be paid in a short time.

Plaintiff asked the court, first, to "issue an order restraining and enjoining all of the officers in this State of the defendant, or any one acting for them in the State of Arkansas, from removing, selling, mortgaging or otherwise disposing of the property, real or personal, in this State, and also restraining them and enjoining all persons from interfering in this State with the business, assets, property or affairs of the defendant; second, that the court appoint a suitable person as receiver to take charge and control of all the property of defendant within the State of Arkansas, with the power to manage, control and operate it, if necessary, under the orders of this court, as may from time to time be made in the premises; and that the cause be referred to a master in chancery, who shall by appropriate orders be authorized to hear, determine and report to the court all indebtedness due by defendant, and that out of the proceeds arising from the receivership the receiver be directed by appropriate orders from this court to pay the costs and expenses of this receivership, next all debts that may be adjudged and found due to the creditors of the defendant, and that the remainder, if any, to the several stockholders as their rights may appear."

On the 25th day of August, 1902, in the vacation of court, a receiver was appointed, and a temporary injunction was granted according to the prayer of the complaint. H. L. Ponder was the receiver, and as such he took charge and control of the assets of the defendant in this State.

No answer to the complaint was ever filed by the defendant

On the 5th day of March, 1904, the National Bank of Commerce of Kansas City, Mo., Traders' Bank of Kansas City and Holland Bank of Springfield, Missouri, filed a petition in this suit, and represented that the defendant was indebted to each of them

in a large sum of money; that the intention of the plaintiff, acting in collusion with other stockholders and officers of the defendant, was to prevent its creditors from taking judgment against it; that Ponder, the receiver, had no experience in the lumber business; that the business of the company, under his management, has been conducted at a loss; that the expenses incurred under his management have been enormous and exceed the profits of the business; and that nothing had been paid under his management on their claims; and they asked that the property be sold to pay the debts.

Within a few days after the filing of the petition of the creditors, fifty-four other creditors joined them in asking for the sale of the property.

On the 31st day of May, 1904, the plaintiff and defendant answered and denied the allegations in the petition of creditors, and asked that their motion be overruled, and the administration of the receiver be continued under the orders of the court.

On the 13th day of July, 1904, upon the final hearing of the cause, after hearing the evidence adduced, the court found the defendant insolvent, and its assets trust funds due to its creditors, and appointed Ponder master to audit their claims, and directed them to present the same to him for allowance, and gave directions to the master as to his mode of procedure; and ordered that the property of the defendant in this State be sold, and appointed Ponder commissioner for that purpose, and gave him directions as to the time, place and manner of the sale, and ordered how the proceeds of the sale should be disposed of.

On the 9th day of September, 1904, the commissioner reported that he caused the property of defendant to be advertised for sale, and also a notice that bids would be received for the property as a whole, prior to September 1, 1904, and that in pursuance of the last mentioned notice he had received those bids, the highest of which was the bid of the Lesser-Goldman Cotton Company, the sum of $85,000; and on the 23d of September, 1904, the master reported the claims, amounting to $185,253.90, which had been heard, examined, investigated, and allowed by him against the defendant, and the court approved the report, and allowed the claims, and ordered and decreed that, upon final distribution, the assets in the hands of the receiver shall be paid upon

such claims, and on the same day rejected the bid, and ordered that the commissioner sell all the property of the defendant as in the former decree provided, "except that, after having offered the property as provided in the decree, he then shall offer the whole of it for sale in bulk, and if the same shall bring the sum of $2,500 in excess of the total aggregate of bids made for the property as provided by the decree, then the property shall be sold to the highest bidder for the property in bulk;" the sale to take place on the 31st day of October, 1904, between the hours prescribed by law for judicial sales. On the first day of December, 1904, the commissioner reported that the property was offered for sale on that day, and purchased by Lesser-Goldman Cotton Company at the price of $100,000, it being the highest and best bidder, and its bid being more than $2,500 in excess of the aggregate amount of the bids made for the property in parcels, and it having complied with the terms of the sale.

On the 24th day of March, 1905, the defendant, and Ed. W. Culver and Newton Mills, stockholders of defendant, moved the court to discharge the receiver and require him to deliver to defendant all money, choses in action and other property now in his hands, or under his control, or which had been received by him at any time since his appointment, because the appointment cf the receiver is void, it not being shown by the complaint or other pleading, òr by any evidence, that the court had any jurisdiction of the subject-matter of this suit, or any right or power to appoint a receiver in this cause. And at the same time filed exceptions to the commissioner's report of sale, in part, as follows: (1) Because the sale was not made within the hours prescribed for judicial sales. . (2) · Because of the circulation of a report on the day and at the place of sale that the title to the property sold was defective. (3) Because the price for which the property sold was grossly inadequate.

On June 3, 1905, the plaintiff moved the court to permit her to take a nonsuit in this suit without prejudice.

Evidence was adduced and heard upon the motion to discharge the receiver and the exceptions to the report of sale by the commissioner, filed by the defendant, and by Ed. W. Culver and Newton Mills. Certified copies of the proceedings of the circuit court of Jackson County, in the State of Missouri, in Mary

C. Culver against Culver Lumber & Manufacturing Company, and of the proceeding of the district court of Wyandotte County, in the State of Kansas, in Mary C. Culver and H. A. Culver against the Culver Lumber & Manufacturing Company were a part of the evidence. From these transcripts the following appears: In the two suits complaints similar to the one in this case were filed on the 25th day of August, 1902. In the first suit, brought in the circuit court of Jackson County, in the State of Missouri, the plaintiff asked that the corporation, the Culver Lumber & Manufacturing Company, be dissolved, and in both suits the plaintiffs asked that a receiver be appointed to take possession of all the defendant's property in the State in which he was appointed; that its assets be converted into cash, and, after the payment of the expenses and costs, the debts of the corporation be paid, and the remainder be distributed among the stockholders. In both cases a receiver was appointed, and he qualified and entered upon the discharge of his duties. In the case brought in the circuit court of Jackson County, Missouri, the creditors of the corporation proved their claims, which were allowed by the court; the property of the corporation in the State of Missouri was converted into money and paid *pro rata* upon the claims of creditors; and the receiver was discharged. In the other case the creditors proved their claims, which the court allowed, and the receiver was ordered to convert the property into money for distribution among them, which does not appear from the transcript to have been done.

So far as appears from the record in this case, M. C. Culver, Elias W. Culver, her husband, Ed. W. Culver, H. A. Culver, and J. E. Culver, her sons, and Newton Mills were the stockholders of the defendant corporation. Elias W. Culver was its president, Ed. W. Culver, treasurer and H. A. Culver, manager. For twelve or sixteen months after the appointment of Ponder receiver, H. A. Culver was the receiver's manager of the property in his hands, and after that Elias W. Culver filled that place. H. A. Culver operated a mill under a lease from the receiver after he ceased to be a manager. M. C. Culver, Elias W. Culver, H. A. Culver and Newton Mills proved claims against the defendant in this suit; and Mills offered a bid for the property at the sale which was rejected by the court. The commissioner commenced

selling the property at ten o'clock a. m., and continued selling, with the exception of an hour at noon, until it was disposed of, which was after five o'clock in the evening.

The value of the property was variously estimated by witnesses. M. La Fore, who bid at the sale for the property $97,000, and bid no more because he heard that the title was defective, says it was worth $250,000; H. L. Ponder, the receiver, says it sold at a fair price; T. J. Shannon, $200,000, but did not believe it would sell for that; H. A. Culver says it was worth $300,000, but he consented to the sale at $85,000, and sought to have the chancellor approve it at chambers; E. J. Mason and S. C. Dowell thought it was worth $100,000.

On the 3d day of June, 1905, the court overruled the motion of the defendants, Ed. W. Culver, and Newton Mills to discharge the receiver and the exceptions to the commissioner's report of sale, and the motion of the plaintiff for permission to take a nonsuit.

The object of this suit and the two suits in the States of Missouri and Kansas was to wind up the business of the defendant company—to ascertain its indebtedness, convert its assets into money and pay its debts with the same so far as it will extend. This relief was asked in all three of the suits. It had property in three States, and for that reason brought the three suits.

Mrs. M. C. Culver was the plaintiff in the three suits. She owned the majority of the shares of the capital stock. No answer was filed in any of the cases. Forty-three of the principal creditors, intervening, asked that the assets of the company be sold, and the discharge of the receiver. Plaintiff and defendant answered their complaint or petition, and insisted on the continuance of the administration of the receiver. For about two years and seven months there was no opposition to the suit. Four of the six stockholders proved claims against the defendant in this suit, and they owned in the aggregate 2979 shares of the 3,000 shares of the capital stock. The president and general manager of the company aided the receiver and participated in his administration of its assets. In fact, the record in this court indicates that all the stockholders and creditors consented to and approved the complaint and the proceedings of the court until after the creditors had proved their claims and the final decrees had been made and

the property sold thereunder, and the commissioner had reported
the sale. Under such circumstances, had the court the right
to wind up the affairs of the defendant and close its business?
Mr. Justice Bigelow, speaking for the court in *Treadwell* v.
*Salisbury Manufacturing Co.,* 7 Gray, 393, said: "We entertain
no doubt of the right of a corporation, established solely for trad-
ing and manufacturing purposes, by a vote of the majority of
their stockholders, to wind up their affairs and close their busi-
ness, if in the exercise of a sound discretion they deem it ex-
pedient so to do. At common law, the right of corporations, act-
ing by a majority of their stockholders, to sell their property is
absolute, and is not limited as to objects, circumstances, or
quantity. Angell & Ames on Corp. § 127 *et seq.*; 2 Kent's Com.
6th Ed. 280; *Mayor, etc., of Colchester* v. *Lowton,* 1 Ves. & B.
226, 240, 244; *Binney's Case,* 2 Bland, 142. To this general rule
there are many exceptions, arising from the nature of particular
corporations, the purposes for which they were created, and the
duties and liabilities imposed upon them by their charters. Cor-
porations established for objects *quasi* public, such as railway,
canal, and turnpike corporations, to which the right of eminent
domain and other large privileges are granted in order to enable
them to accomodate the public, may fall within the exception; as
also charitable and religious bodies, in the administration of
whose affairs the community, or some portion of it, has an in-
terest to see that their corporate duties are properly discharged.
Such corporations may, perhaps, be restrained from alienating
their property, and compelled to appropriate it to specific uses, by
mandamus or other proper process. But it is not so with cor-
porations of a private character, established solely for trading
and manufacturing purposes. Neither the public nor the Legis-
lature have any direct interest in their business or management.
These are committed solely to the stockholders, who have a pe-
cuniary stake in the proper conduct of their affairs. By accept-
ing a charter they do not undertake to carry on the business for
which they are incorporated indefinitely, and without any regard
to the condition of their corporate property. Public policy does
not require them to go on at a loss. On the contrary, it would
seem very clearly for the public welfare, as well as for the interest
of the stockholders, that they should cease to transact business as

soon as, in the exercise of a sound judgment, it is found that it can not be prudently continued. If this be not so, we do not see that any limit could be put to the business of a trading corporation, short of the entire loss or destruction of the corporate property. The stockholders could be compelled to carry it on until it came to actual insolvency. Such a doctrine is without any support in reason or authority." See to the same effect *Price* v. *Holcomb,* 89 Iowa, 135, 136; *Merchants & Planters Line* v. *Waganer,* 71 Ala. 581, 587; *Berry* v. *Broach,* 65 Miss. 450; *Miner* v. *Belle Isle Ice Co.,* 93 Mich. 97; 2 Cook on Corporations, § 629; 1 Morawetz on Corporations, § § 413, 284, 285; 2 Beach on Private Corporations, § 781; Taylor on Private Corporations, § 431; Clark on Corporations, p. 445; 5 Thompson on Corporations. § 6685.

The allegations of the complaint are admitted by the failure of the defendant to answer the same. Among other things plaintiff alleges therein that the president, secretary, and treasurer of the company, without the authority of the board of directors, have purchased real estate, and recklessly and extravagently and unnecessarily expended about $5,000 in buildings thereon, and the secretary and treasurer have so carelessly, recklessly and extravagently operated the business of the defendant at Kansas City, Kansas, as to involve the defendant in the indebtedness of $30,000, and have applied a large amount of money and property belonging to the corporation to their own personal use and benefit; that such recklessness and extravagance alarmed the large creditors, and caused them to become so urgent in their demands as to induce the president to enter into an agreement in writing in and by which J. H. Jarrett and Frank I. Buckingham, both of whom are inexperienced in the lumber business, were to be placed in the absolute charge and control of the entire business of the defendant, including the collection of money, drawing checks, the sale of defendant's output or product, and everything else that could be done by the defendant through its duly authorized officers; that under this agreement they have taken possession of all the property of the defendant in Kansas and Missouri and are arbitrarily refusing to permit the officers, directors, and legal managers of the corporation to have any control in the management of its business, which

by their management, will be greatly imperilled and entirely wrecked; that she has requested its directors and officers to bring suit to set aside the contract and take the management of its business, and they refused so to do; that the defendant is a foreign corporation, and its employees and creditors are threatening to attach its property in this State, and thereby to sacrifice a large amount of its property; and that its indebtedness amounts to about $250,000. From all of which it appears that the corporation is seriously threatened with insolvency by the frauds and mismanagement of its officers; and the evidence in this case tends strongly to corroborate this conclusion, if it does not prove it. Under such circumstance, it seems, it would be the exercise of sound judgment to wind up the affairs and close the business of the corporation.

Plaintiff owns a majority of the shares of the stock, and is entitled to control the business of the corporation. *Pratt* v. *Jewett,* 9 Gray, 34; *Von Schmidt* v. *Huntington,* 1 Cal. 55, 73; *Miner* v. *Belle Isle Ice Co.,* 93 Mich. 97. There is no reason why she should not be entitled to protect her interest in the same manner as a majority in number of the stockholders could do if they owned it. The corporation consented to her doing so, and the stockholders acquiesced, until it was too late to withdraw consent. Forty-three creditors, representing at least $125,206.73 of the $185,253.90 proved against the corporation, join her in asking for the relief. In doing so they asked a court of equity to grant equitable relief over a subject-matter coming within its jurisdiction. Creditors do not, and stockholders have no right to, complain.

At the time of the institution of this suit the property of the corporation was in a precarious condition. It was threatened with attachment by creditors, which begun, it being a foreign corporation and considerably in debt, the probability is all the creditors, for their own protection would have been forced to attach. In that event the probable result would have been the sacrifice of its property and hopeless insolvency. Its officers were recklessly and extravagantly managing its business affairs, involving it in debt, and converting its property to their own use. Its board of directors, although requested to do so, refused to interfere. The interposition of a court of equity and the appointment of a re-

ceiver were necessary and demanded for the protection of stockholders and creditors. *Sage* v. *Memphis & Little Rock Railroad Company,* 125 U. S. pp. 361, 375; *Union Trust Co.* v. *Illinois Midland Ry. Co.,* 117 U. S. 434, 458; Receivers of Corporations (2 Ed.) by Gluck and Becker, § 9, and cases cited; Beale on Foreign Corporations, § 791; Alderson on Receivers, § 362; High on Receivers, § 306, and note.

Courts of equity have no right or authority to dissolve a foreign corporation, or wind up its business, but they may, in cases like this, take charge of its property within the jurisdiction of the court, and enforce the rights of creditors and stockholders in respect to the same, where it can be done by the exercise of equity jurisdiction. As the affairs and business of the corporation in the State of Missouri, its domicil, have been wound up, and the receiver appointed for that purpose discharged, and creditors have proved their claims here, it will not be necessary to remit any part of the assets in this State to that State, but the same may be fully disposed of here according to the respective rights of creditors and stockholders therein.

The trial court did not err in refusing to allow the plaintiff to take a nonsuit. At the time she asked for the privilege to do so, creditors had intervened, a final decree had been rendered, and under it the property involved had been sold; and creditors had proved their claims against the corporation. Other parties had acquired rights, and she no longer had power to control the suit. 1 Daniell's Chancery Pleading & Practice (6 Ed.), marginal pages, 793, 794, and cases cited. *Cromwell* v. *MacLean,* 123 N. Y. 474.

The motion to discharge the receiver was properly overruled; and the court committed no reversible error in overruling the exceptions to the commissioner's report of sale. The sale commenced within the hours prescribed by the decree of the court. Every one present had the opportunity to bid, and there is no evidence that any one lost a bid by continuing the sale beyond the time prescribed. There is no evidence that the reports that the title to some of the lands sold was defective were false and therefore affected the sale. There was a contrariety of opinion as to the value of the land. Three witnesses testified that it sold for its value; and three valued it from $200,000 to

$300,000, and facts proved weakened their evidence. The chancellor was the judge of the weight of the evidence and the credibility of witnesses, and the evidence does not show that he erred in his judgment. The court did not abuse its discretion in approving the sale. See *George* v. *Norwood*, 77 Ark. 216; *Johnson* v. *Campbell*, 52 Ark. 316; *Farnsworth* v. *Hoover*, 66 Ark. 375, 376; *Waldo* v. *Thweatt*, 64 Ark. 126; *Colonial & United States Mortgage Co.* v. *Sweet*, 65 Ark. 152.

Decree affirmed.