STEVENSON *v.* GAULT.

Opinion delivered November 26, 1917.

1.  JUDICIAL SALES—ADEQUACY OF PURCHASE PRICE.—The mere inadequacy of price will not justify a court in refusing to approve a sale and depriving the purchaser of the benefit of his purchase, unless the inadequacy is so great as to shock the conscience or to amount to evidence of fraud.

2. JUDICIAL SALES—INADEQUATE PRICE—RESCISSION.—A judicial sale
   of land will be set aside, when the purchase price was grossly in-
   adequate, and when the purchaser permitted information to be
   given to prospective bidders derogatory to the value of the land.

Appeal from Yell Chancery Court, Dardanelle District; *Jordan Sellers*, Chancellor; affirmed.

*Manning & Emerson,* for appellant.

1. A judicial sale will not be set aside for mere inadequacy of price, if otherwise fair. 16 R. C. L., § 70; 86 Ark. 255; 65 *Id.* 152; 66 *Id.* 493; 77 *Id.* 216, etc.

Here the bid was in good faith and no fraud, mistake nor unfairness was shown. 20 Ark. 381-409; 123 *Id.* 523; 111 *Id.* 158; 108 *Id.* 366; 44 *Id.* 502; 56 *Id.* 240. Appellant was a *bona fide* purchaser.

HART, J. This is a bill in equity filed by J. L. Gault and Jane Gault to dissolve the partnership of J. L. Gault & Company and to wind up its business.

The complaint states that the firm owned large bodies of lands which were mortgaged to secure its debts and J. L. Gault and Jane Gault owned lands as tenants in common and that J. L. Gault had mortgaged his interest in said lands to secure the firm's creditors. All the creditors of the firm, both those who were secured by mortgages and those whose debts were unsecured were made parties to the action.

A decree was entered ordering the sale of the lands. Pursuant to the decree the lands were sold on May 1, 1916. Among the lands sold were the following: The northeast quarter of the northeast quarter and northwest quarter of the northeast quarter of section two, township five north, range nineteen west, containing 82.06 acres. J. F. Stevenson became the purchaser of said lands, having bid therefor the sum of $500. Jane Gault and other creditors filed exceptions to the report of sale of the commissioner, and among the lands were embraced the lands sold to Stevenson.

Testimony was taken on both sides. The court sustained the exceptions to quite a number of tracts sold and among them the tract sold to Stevenson. Inasmuch as no appeal was taken from the ruling of the court except by Stevenson, we need only set out the testimony relating thereto and the finding of the court with reference thereto.

The land purchased by Stevenson lies in both Conway and Yell Counties. The Petit Jean River runs through the land and is the dividing line between Yell and Conway Counties. All that part of the land which lies in Yell County is rich alluvial soil and produces fine crops of cotton and corn. That part of the land which is in Conway County is of slate formation. It was hilly and worth but little for cultivation or for any other purpose. These facts were known to the bidders attending the sale. J. T. Dunbar first bid for the land $1,000. J. H. Parker, a lawyer and real estate man attending the sale, had a copy of the map of the land traced by a former county surveyor of Yell County and after referring to his map, laughingly warned Dunbar that he had better be careful, that nearly all of the land was situated on the south side of Petit Jean. The map was handed around among those present at the sale and it showed that most of the land was situated in Conway County. It appears that those present accepted the map as showing the true situation of the land and on that account refrained from bidding on it. Because he thought that most of the land was in Conway County, Mr. Dunbar asked permission to withdraw his bid and this was granted him by the commissioner making the sale. J. F. Stevenson then bid the sum of $500, and that being the highest bid the land was struck off to him.

Prior to the sale the land had been appraised by three practical farmers who had lived in Yell County for many years and who were familiar with the character of land sold. They appraised the land in question at an average of $42 per acre and testified that they thought this was the reasonable value of the land.

Another witness testified that he had been over the land when it was first purchased by J. L. Gault and knew its value. He stated that the price put on it by the appraisers was very conservative.

Another witness testified that he had· purchased a forty acre tract at the sale near this·one for $4,000 and that he considered it to be worth that amount; that he considered the land he bought to be worth something more than 40 acres of the land in question but stated that all·the land in question which was in Yell County was fine land. He also bought two other forty acre tracts at the sale situated near this one and paid for one of them $3,500 and for the other $2,900.

A tenant who had been on the land for more than ten years testified that the part of it situated in Yell County was very fine and that it always produced good crops of cotton. He stated that the land would produce nearly a bale of cotton to the acre. The thread of the stream is the dividing line between Yell County and Conway·County. A survey was made of the land and something over sixty acres of it is on the Yell County side of the river. There is also a levee and a road through the land on that side of the river. There are about fifty-two acres of the land north of the levee and there are a few acres between the levee and road and Petit Jean River. The whole of the fifty-two acres except a thicket is in cultivation. The thicket comprises six or eight acres and when cleared can be cultivated and is of the same character as the remainder of the land in Yell County.

According to the testimony of Stevenson and Parker the land was not worth much more than $1,000. Parker still adhered to his original opinion that the greater part of it was in Conway County.

During the pendency of the action J. L. Gault died and A. N. Falls was appointed special administrator of his estate. After the land had been ordered sold R. E. Pugh, representing a company which had mortgages on part of the lands, came to Dardanelle for the purpose

of examining them. He went to see Mr. A. N. Falls who was the cashier of a bank, which also had a mortgage on a part of the lands. Falls and Pugh together examined a part of the land. Falls then recommended J. F. Stevenson as a suitable man to accompany Pugh. Among other lands examined by Pugh and Stevenson was the 82.06 acre tract in controversy. Falls and Stevenson were both dealers in real estate and usually each took the other in on deals that he made.

Stevenson said that he did not say anything to Dunbar or anyone else to induce him not to bid on the land. He stated that he and Pugh were standing close together at the sale and the commissioner remarked after Dunbar had withdrawn his bid that if he could not get a bid on the land he was going to throw it out; that Pugh then remarked to him "let's take a gamble on it;" that he, Stevenson, said all right and then bid $500 for the land and it was struck off to him; that later on in the afternoon that he and Pugh took Falls in on the purchase. He was asked if Falls was supposed to be in on all the lands bought by him and answered "Yes, sir. If he buys land and I want to go in I can, and if I buy land it is the other way—a kind of partnership." Stevenson further stated that there was no general partnership between him and Falls but if either one of them bought a piece of land the other usually came in on it if he wanted to.

The chancellor found that the prices in all cases in which exceptions had been filed were so grossly inadequate as to shock the conscience of the court and further found as follows:

"And as to exceptions No. 1, the same being exceptions to the report of sale to J. F. Stevenson for the sum of $500 for the north half northeast quarter, and northwest quarter of northeast quarter, section 2, township five, N. R. 19 west, 82.06, partly in Yell and partly in Conway County, on the additional grounds and for the additional reasons that there were such representations made at the sale by the persons attending the sale

as to the location of lands with reference as to whether or not the same or the greater portion was north of the Petit Jean in the Arkansas River bottom, or south in Conway County in the hills and uplands as to amount to a legal fraud and to cause the withdrawal of the bid and to cause said lands to sell for a grossly inadequate sum.''

It was accordingly decreed that the sale of all the lands to which exceptions had been filed be set aside. As above stated Stevenson alone has appealed from that decree.

(1) The policy of the law founded on the interest of the owner and purchaser alike is that there should be stability in judicial sales so that bidders would be encouraged to attend such sales and in order that the property may bring its full value. It is the settled rule of this court that mere inadequacy of price will not justify a court in refusing to approve a sale and depriving the purchaser of the benefit of his purchase unless the inadequacy is so great as to shock the conscience or to amount to evidence of fraud. *George* v. *Norwood,* 77 Ark. 216; *Wells* v. *Lenox,* 108 Ark. 366, and *Gleason* v. *Boone,* 123 Ark. 523.

In the case of *Graffam* v. *Burgess,* 117 U. S. 180, which was cited in *George* v. *Norwood, supra,* the court said:

''From the cases here cited we may draw the general conclusion that, if the inadequacy of price is so gross as to shock the conscience, or if, in addition to gross inadequacy, the purchaser has been guilty of any unfairness, or has taken any undue advantage, or if the owner of the property, or party interested in it, has been for any other reason, misled or surprised, then the sale will be regarded as fraudulent and void, or the party injured will be permitted to redeem the property sold. Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud.''

That there was gross inadequacy of price in the present case can not be gainsaid. In Ann. Cas. 1914-D, pages 6 to 10 will be found many illustrative cases in which inadequacy of price and other circumstances were held sufficient to justify the court in setting aside the sale. Courts will seize upon slight circumstances to add to the weight of inadequacy of price to turn the scale where it shows that the purchaser is in some measure responsible for it. It can not be doubted that Dunbar withdrew his bid and that others refrained from bidding because they thought nearly all of the land in controversy was in Conway County and was of but little value. It was generally known among the bidders that the land in Yell County was very rich and productive and that the land just across the river in Conway County was a slate bank and hilly. It is true that Stevenson did not say anything to induce Dunbar to withdraw his bid or to prevent any-one else from bidding at the sale. It was perfectly apparent to him, however, that they refrained from bidding because they believed that most of the land was situated in Conway County. He had been on the land a short time before the sale for the purpose of examining it. He had not at the time of the sale agreed to take in Falls in the deal but did so later on in the afternoon. J. L. Gault, one of the parties to the suit, had died during its pendency and Falls had been appointed special administrator of his estate. There was a general understanding between Stevenson and Falls that each was to take the other in on all their deals made, when asked to do so. It is true that Falls had no duties to perform with regard to the sale; for it was conducted by a commissioner appointed for that purpose. We do not think that any fraud was intended by the conduct of any of the parties but as above stated where the price was grossly inadequate the courts will seize upon the slightest circumstance to set aside the sale where it is shown that the purchaser is in some measure responsible for it .

According to a decided preponderance of the testimony the land was worth at least $3,500. It was situated twenty miles away from where the sale was being conducted and under the peculiar circumstances detailed above, when it became apparent that the bidders were relying upon the map produced by Mr. Parker, it was incumbent upon Stevenson to have told them that he had been upon the land a short time before and that the most of it was in Yell County. This coupled with the fact that Falls was special administrator of the estate of J. L. Gault, deceased, and was taken into partnership on the deal on the same afternoon, was sufficient to justify the court in setting aside the sale.

The decree will, therefore, be affirmed.