DENT *v.* ADKISSON.

Opinion delivered November 30, 1931.

*George F. Hartje* and *Patterson & Patterson,* for appellant.

*R. W. Robins,* for appellee.

BUTLER, J.  The appellants, R. E. Dent and wife, on December 30, 1927, were the owners of a plantation in Faulkner and Pulaski counties containing approximately 4,200 acres, more than half being fertile lands situated in the Arkansas River bottoms, with a total of approximately 3,000 acres under cultivation upon which was a ginnery and other improvements.  The appellants owned, in addition to the plantation, 41 mules, 2 head of horses, 31 head of grown cattle, 31 calves, 57 head of hogs, and farming machinery necessary for the cultivation of the plantation.  On the date mentioned, they executed two promissory notes to the appellee, one for $10,000 due October 1, 1928, and the other for $60,000 due December 30, 1928.  To secure these notes and such further advances of money as the appellee might make to them, they executed a real estate mortgage on their plantation and also a chattel mortgage covering the property above

referred to, together with the crops to be grown during the year 1928.

On January 22, 1929, the appellee, G. W. Adkisson, brought suit to foreclose these mortgages, and on the 26th of January following made application for a receiver to take charge of the property. Thereupon W. W. Bishop was appointed as receiver, who, on February 1, 1929, with the approval of the court, delivered all the said property into the possession of the appellee. Of the original amount loaned and for the moneys advanced during the year 1928 there remained a balance unpaid of $56,473.94, for which sum judgment was rendered and a decree of foreclosure entered on February 13, 1929, and an order for the sale of the property embraced in the mortgages. The commissioner appointed by the court to make the sale advertised the property for sale on the 12th of September. On the 11th of September the appellants paid to the appellee $10,000, in consideration of which payment the sale was extended to the 12th day of December following. On December 12th the appellant paid the appellee the sum of $5,000, and the sale was extended to March 14, 1930. On that date $5,000 more was paid with an extension of the sale to April 14th, on which date another $5,000 was paid by the appellants and an extension of sale given. On September 3, 1930, the court made an order further extending the sale of the property until November 3, 1930, at which time the appellants paid to the appellee a further sum of $5,000. In other words, the date of sale was postponed from time to time in consideration of cash payments, the total of which amounted to $30,000 from September 11, 1929, to September 3, 1930. The rents collected by the appellee during and for the years 1929 and 1930, not all being accounted for on October 21, 1930, the appellants waived claim for the balance of these rents, and entered into a written agreement with the appellee by which it was agreed that no further postponement of the sale would be asked, and that at the sale the appellee should bid an amount equal to the balance due in his favor, and that the hearing of the report of sale be postponed until

December 15th, at which time confirmation of sale would be made unless the indebtedness should on or before that date be paid. The agreement concluded as follows: "In event the defendants shall, on or before December 15, 1930, pay to the plaintiff the amount that should be then due on the indebtedness, including interest up to that date, and costs, mentioned in and covered by the decree in this case, then plaintiff will join with the defendants in asking the court to refuse to confirm the said sale, or, if the defendants prefer, and shall so direct the plaintiff in writing, upon the payment to the plaintiff of the amount which should then be due on said indebtedness, including interest up to date and costs, the plaintiff will assign and transfer without recourse from him the decree and judgment in this case in his favor to such person or corporation as the defendants may direct in writing."

For some reason no action was taken by the court on December 15th, but on December 29th report of sale was made showing that the property had been purchased by the appellee for the balance due him in the sum of $39,659.01, and the report came up for confirmation, when the appellant filed a petition, which, omitting formal parts, is as follows:

"Come the defendants in the above-entitled cause and respectfully represent to the court: That on the day of............, 1930, they consented that the decree obtained in the above-entitled cause should be executed by the commissioner by selling the property mentioned therein; that their consent was obtained and given by the representation of the said plaintiff to said defendants that, if they procured the money due him before the confirmation of the sale, that he would satisfy said decree; that at the time these defendants gave their consent to a sale of the property they told the plaintiff, G. W. Adkisson, that they had made arrangements with the City National Bank of Fort Smith, Arkansas, whereby said bank would make the loan if the tenants to whom he had rented said place would make and execute a surety bond for the payment of the rents for the year 1931; that these defendants pro-

cured the agreement of the tenants to execute a surety bond for the payment of the rents, and one of them had signed said bond and the other was on his way to Lamar, Arkansas, to sign said bond when the plaintiff got in touch with him and made false and fraudulent representations to said tenant, and with promises to rent said place to said tenant at a cheaper price, caused said tenant to refuse to sign said surety bond; that said representations so made to the said tenant of the defendant was made for the purpose of defeating defendant's loan on said place and for the purpose of getting the place of the defendants at a very low and unfair price. That these defendants have already paid said plaintiff more than forty thousand dollars; that he has collected the rents from said place for the past two years and has failed to account for same, and that said plaintiff is doing everything possible to defeat the rights of the defendants in paying off said amount due. That the defendants have the original lease and surety bond signed by one of the party's tenants and attaches the lease and surety bond hereto as Exhibits A and B, respectively.

"That these defendants would have had said money to have tendered into court in full and complete settlement of the decree rendered in the above-entitled cause, had it not been for the false and fraudulent representations made by the plaintiff to the prospective tenant of the defendants, and had said plaintiff not connived with the tenant of the defendants, whereby he would rent said lands involved in this suit at a much cheaper and lower price, and had said plaintiff not procured the tenant of these defendants not to deal with said defendants and to wait until he had his deed confirmed and that he would rent to him cheaper; that, if the defendants are given a reasonable length of time from this date to procure a loan on said property, that the defendants can and will procure a loan on said property and pay the plaintiff all that is due him, including interest at the rate of ten per centum per annum; that these defendants were hindered in procuring the loan within the time given them by the

court heretofore for the purpose of redemption of said property by the false and fraudulent representations of the plaintiff and by said plaintiff conniving with the tenant of the defendants for the purpose of getting their said lands at a low and cheap price, and that said lands are easily worth more than four times the amount that is now due plaintiff; that, if plaintiff had not interfered with defendants' business, as above mentioned, that these defendants would have had the money due plaintiff at this time, and the above matter settled and fully paid off, including the amount due plaintiff with interest and all court costs of the suit.''

A demurrer was filed to this petition which was sustained by the court, and an order to that effect made and entered. In the order confirming the sale, reference is again made to the filing of the petition by the appellant for postponement and to the demurrer interposed and the overruling of it. After reciting the report of the commissioner, the order of confirmation concludes as follows: ''And said report coming on to be heard is submitted to the court along with a written agreement entered into between the parties on October 21, 1930, and along with the proof as to notices, etc., and, being well and sufficiently advised, it is by the court considered, ordered and adjudged that said report of sale be, and the same is hereby, approved, and that said sale be, and the same is, hereby in all things approved and confirmed.''

From the order sustaining the demurrer, this appeal is prosecuted, and the appellants here insist that, as the demurrer for the purpose of the hearing admitted the allegations of the petition, the court erred in sustaining it for the reason that the facts alleged showed that they were prevented from carrying out their contract of October 21, 1930, because of the fraudulent practices of the appellee.

The appellee takes the position that, even if the allegations of the petition are to be taken as true, this would not entitle appellants to the relief sought, on the theory

that, as there had been a judicial sale of the lands, it ought not to be disturbed in the absence of a showing, in addition to the inadequacy of the purchase price, that there was fraud or misconduct which would affect the validity of the sale; and cites the cases of *George* v. *Norman,* 77 Ark. 216, 91 S. W. 557; *Johnson* v. *Baum,* 158 Ark. 441, 250 S. W. 354; and *Doyle* v. *Maxwell,* 155 Ark. 477, 244 S. W. 732. The principles announced in those cases have become the settled law in this State, and it is argued that application of those principles to the case at bar defeats the relief sought and justifies the chancellor's action because there was no fraud, misconduct or irregularity charged as to the conduct of the sale. The answer to this contention is that the appellants do not seek relief because of any irregularity in the sale, but for a fraud practiced by the appellee which prevented them from carrying out the agreement of October 21.

It is next insisted that the appellants may have no relief here because the order of confirmation recites that proof was taken, and, as the appellants have failed to incorporate this testimony in the record, the conclusive presumption must be indulged that the testimony was sufficient to authorize the order of the lower court. It is not to be doubted that on any issue made in the trial court, where testimony is taken and not preserved, the conclusive presumption arises that the evidence was sufficient to sustain the finding and decree of the court. *Price* v. *So. Lbr. Co.,* 98 Ark. 366, 135 S. W. 908; *Dierks Lbr. & Coal Co.* v. *Cunningham,* 81 Ark. 427, 99 S. W. 693; *Remmel* v. *Collier,* 93 Ark. 394, 130 S. W. 167. The appellants, however, have not challenged the regularity of the sale, and the order does not indicate that any proof was heard except that relating to the notice and other matters relative to the sale. No fair interpretation can be placed upon the language of the order of confirmation which would justify the inference that testimony was heard regarding the truth or falsity of the allegations contained in the petition. For the purpose of the hearing on the demurrer, these were admitted to be true, and all that the

record justifies us in concluding is that the chancellor heard no testimony, but, treating the allegations as true, held them insufficient to show such conduct on the part of the appellee as would justify the relief asked.

It remains, then, for us to inquire whether or not any facts were specifically averred which would constitute fraud, and, if so, if it can be said that the fraud practiced worked such injury to the appellants as would entitle them to the relief prayed.

What is, or is not, actionable fraud depends largely upon the circumstances of each particular case. Fraud is protean in its aspect and assumes many forms which are often difficult to distinguish and to point out with exactitude wherein they work harm. It may be well that no exact definition of fraud can be formulated, for, if so, those disposed to take advantage of the necessitous or confiding could use the definition advantageously to further their dishonest intentions. For, as is said by Mr. Parsons, quoted with approval in *Winters* v. *Bandell,* 30 Ark. 362: ''It is the very nature and essence of fraud to elude all laws and violate them in fact without appearing to break them in form, and if there were a technical definition of fraud, and everything must come within the scope of its words before the law could deal with it as fraud, the very definition would give to the crafty just what they wanted, for it would tell precisely how to avoid the grasp of the law.'' It is evident that the property mortgaged exceeded many times in value the amount of the debt it secured. It is also apparent that the appellee was by no means an indulgent creditor, for within a few weeks after the debt became due, although it had been reduced materially, he brought his action to foreclose the mortgage. Forbearance is not given, but his indulgence, purchased by payment within a space of shortly more than a year of sums aggregating $30,000, which reduced the indebtedness approximately one-half. Having been able to raise these large sums by which the debt was thus reduced, it is not to be questioned that, when appellants made the agreement of October 21, 1930, there was a

reasonable certainty in their minds that they would be able to secure and pay off the remainder of the debt. It can be scarcely imagined that, had the appellants appealed to the chancellor upon a showing of the large payments made, he would not have given them a reasonable time to raise the balance due, and doubtless a much greater length of time than that which was asked and granted under the agreement of October 21st. Treating the allegations of their petition as true, the appellants had what they believed the means by which the debt could be paid in time for them to repossess the plantation and make arranagements for its operation through another year; they had the assurance of one of the large banks of the State that, if they could secure tenants for a three-year period with the rent of the first year guaranteed, the money would be advanced to them. They confided their plans to the appellee, and he deliberately took a sure means to prevent them from raising the money and redeeming the property. He learned who the tenants were and the annual sum they were to give for the rent of the property, and then went to these tenants, knowing the need and the plans of the appellants, and that it would be too late for them to devise another plan by which the money could be raised by the date agreed upon, and while the agreement between the appellants and the tenants was in the course of consummation, and offered the tenants the plantation for a lesser sum. Of course, appellee knew, if the tenants accepted his offer, what the result would be to the appellants, and it must be inferred that he intended such result to occur. It was an act of craft and unfairness which should have no countenance in the court. While he was under no legal obligation to aid the appellants, he was certainly bound by every sentiment of honor not to interfere with the consummation of the plans which they had confided to him. The inadequacy of the price bid by the appellee at the mortgage sale is not complained of, nevertheless the reason for this is apparent, as the contract by which he was to bid that amount was

with the understanding that it was to be repaid to him. This agreement lulled the appellants into security, and it was not to their disadvantage that such price be inadequate. The sum bid, however, should be considered, and this, together with the alleged conduct of the appellee, is sufficient, if it be established by proof, to warrant a court of conscience in setting aside the sale so that a reasonable time might be given the appellants to discharge their debt, or at least an opportunity that the lands might bring more nearly their value. *Union & Planters' B. & T. Co.* v. *Pope,* 176 Ark. 1023, 5 S. W. (2d) 330.

We have been referred to no case where the facts resemble the facts in this case, but we are of the opinion that an application of the general doctrine of fraud supports the conclusion reached. As we have said, because of the multiplicity of forms which fraud assumes, whether or not it exists must be determined from all the surrounding circumstances of each case as it arises. *Turner* v. *Huggins,* 14 Ark. 21; *White* v. *Smith,* 63 Ark. 513, 39 S. W. 555; *Bugg* v. *Wertheimer-Swartz Shoe Co.,* 64 Ark. 121, 40 S. W. 134; *Cross* v. *Bouck,* 175 Calif. 253, 165 Pac. 702; *Mudsill Min. Co.* v. *Watrous,* 61 Fed. 163; *Bellevue State Bank* v. *Coffin,* 22 Ida. 210, 125 Pac. 876; *Kronfield* v. *Missal,* 87 Conn. 491, 89 Atl. 95.

Our conclusion is that the court erred in sustaining the demurrer and in confirming the sale. The decree is therefore reversed, and the cause remanded with directions to set aside the order of confirmation and to overrule the demurrer to the petition, and for further proceedings, according to the principles of equity, and not inconsistent with this opinion.