Robert E. LOOPER and ENTROPHY SYSTEMS, INC. *v.* MADISON GUARANTY SAVINGS & LOAN ASSOCIATION, et al.

86-242                                    729 S.W.2d 156

Supreme Court of Arkansas
Opinion delivered May 18, 1987

226

*Eichenbaum, Scott, Miller, Crockett, Liles & Heister, P.A.,* by: *Leonard L. Scott* and *C. Richard Crockett,* for appellant.

*Wright, Lindsey & Jennings,* for appellee.

DARRELL HICKMAN, Justice. In a foreclosure proceeding, the chancellor refused to confirm the sale of a residence. The

reasons given were because the purchase price shocked her conscience and other circumstances existed which justified the refusal. The question presented involves the law concerning the confirmation of judicial sales when an inadequate price is paid.

The appellants argue there is no Arkansas case holding that a sale can be set aside simply because the sale price is inadequate. Conceding that we have said a sale may be set aside because it "shocks the conscience of the court," the argument is that this is only dictum: the law is or should be that some other circumstances must exist, which amount to a fraud brought about by the buyer. It is further argued that since the buyers in this case, the appellants, were faultless, the sale should not have been set aside.

The appellees argue that our decisions state a sale can be set aside solely because it shocks the conscience of the court, and even if that were not so, there were other circumstances present which justified the chancellor's actions.

Both parties are right in a sense. We have not held that a sale can be set aside simply because of an inadequate sales price. But we have said on four separate occasions that a sale may be set aside if it shocks the conscience of the court. We have never had a case before in which a trial judge set aside a sale solely because it shocked the conscience of the court. Essentially, we have that in this case and affirm the chancellor's decision as being discretionary, permitted by law, and not arbitrary.

The sale price was $1,900, and the market value was found to be $42,500; that is, the property sold for 4.4% of its value according to the chancellor's finding.

A price that "shocks the conscience" of a judge can never be reduced to a mathematical formula. It depends on a variety of circumstances: the value of the property, the circumstances surrounding the sale, the price, the rights of the parties participating in the sale, and the harm that may result if the sale is confirmed, to name a few. Nevertheless, the decision is one for the chancellor to make, using sound discretion. *Summars* v. *Wilson*, 205 Ark. 923, 171 S.W.2d 944 (1943). While no fixed formula exists or can exist for what is a shocking sale price, fixed rules do exist for us to review such a case. First, we are an appellate court; we do not retry cases. We cannot sit as jurors who determine facts

in law cases, nor chancellors who do the same in chancery courts. *Merriman* v. *Yutterman*, 291 Ark. 207, 723 S.W.2d 823 (1987); *Black & Black Oil Co.* v. *Guy R. Smith Drilling Co.*, 289 Ark. 487, 712 S.W.2d 901 (1986). Factual determinations of chancellors must be upheld unless clearly erroneous. ARCP Rule 52.

When we examine a discretionary decision made by a chancellor, the question is not what we would have done, but whether, as a matter of law, discretion was abused—was the judgment call arbitrary or groundless? *Keirs* v. *Mt. Comfort Enterprises et al.*, 266 Ark. 523, 587 S.W.2d 8 (1979); *Robbins* v. *Guy*, 244 Ark. 590, 426 S.W.2d 393 (1968).

Other principles also apply when we review a case, sometimes omitted from our opinions, but nonetheless applicable to all our decisions. The appellant, the party losing at the trial level, has the burden of demonstrating error. *Baldwin Co.* v. *Ceco Corp.*, 280 Ark. 519, 659 S.W.2d 941 (1983). The evidence on appeal and all reasonable inferences from that evidence, and the findings of fact by a judge must be reviewed in a light most favorable to the appellee, the party that won at the trial level. *Sipes* v. *Munro*, 287 Ark. 244, 697 S.W.2d 905 (1985); *Wasp Oil, Inc.* v. *Arkansas Oil & Gas, Inc.*, 280 Ark. 420, 658 S.W.2d 397 (1983). With these principles in mind, we review the chancellor's finding.

Nathan Graham purchased a residence, and Madison Guaranty Savings & Loan Association took a mortgage on it for $38,400. Graham made no payments, and Madison sued to foreclose the loan. Foreclosure and judgment were granted. The property was ordered sold at a judicial sale to the highest bidder on June 5, 1986. Madison's attorney, Charles Ward, intended to be there to bid in or near the amount owed Madison. That amount, which was reduced to judgment, was $46,470.61. Graham testified that he did not attend the sale because the lawyer, Ward, had told him that he, Ward, would attend the sale and bid in for Madison the amount of the judgment. Graham concluded he would not need to be there to protect his interests, because such a bid would not result in a deficiency judgment against him. Ward was late to the sale, a few minutes according to him. Two different secretaries had reminded Ward of the noon sale late that morning.

Robert Looper, acting alone, and Imran Bohra, acting on behalf of Entrophy Systems, Inc., joined forces and bid on the property. According to the testimony, the opening price bid was one dollar, and the bidding increased competitively to the sale price of $1,900.

An expert testified that the property had a market value of $42,500. Looper said he drove by the property and decided not to bid more than $10,000 or $12,000. He said its value was diminished because a youth home was across the street, and he did not know the condition of the interior of the house. Also, he knew the property was heavily mortgaged.

After a hearing the chancellor refused to confirm the sale and ordered a new sale. The chancellor made these findings of fact:

1. A lawfully advertised judicial sale of the subject property was held on June 5, 1986. At this sale Robert E. Looper and Entrophy Systems, Inc. were the successful bidders at the price of $1,900.00. The total amount of the judgment, interest and costs against the property was $46,470.61.

2. If this sale price is confirmed, the defendant will be personally liable for a deficiency judgment for the remaining balance of $44,570.61.

3. The fair market value of the subject property is $42,500.00. The bid price is therefore 4.4% of the fair market price.

4. As a result of a conversation between plaintiff's counsel and defendant, the defendant received the impression that plaintiff would bid in the property at the total amount of judgment, interest and costs. While the court finds no actual representation was made by plaintiff's counsel that such a bid would be made, it is clear that the defendant believed this would occur and relied upon that belief, whether this reliance was reasonable or not.

5. Through inadvertance, the plaintiff's counsel failed to attend the sale on time and therefore missed the opportunity to bid in accordance with plaintiff's instructions. This

occurred because plaintiff's counsel was scheduled to attend a hearing in Hot Springs the morning of the sale and had requested another attorney to cover the sale. He returned to the Little Rock office in time to attend the sale, but became involved in a telephone conversation, and was reminded of the sale by a secretary. After running to the courthouse, counsel arrived a few minutes late to find that the property had already been sold.

6. Plaintiff had instructed counsel to bid the property at the amount of the judgment, interest and costs, and stands ready, willing, and able to so bid in the event of a resale.

* * *

The price bid at this sale is indeed so grossly inadequate as to shock the conscience of this court. The confirmation of this sale at such a price would result in serious harm to the defendant, Graham, who would suffer a large deficiency judgment and be subject to execution, garnishment, and other post-judgment remedies. The law is such that inadequacy of price when so gross, need only be coupled with slight circumstances to justify setting aside the sale. This is a court of equity, and foreclosure is historically an equitable proceeding intended to protect the debtor. Confirmation is within the sound discretion of the chancellor. This chancellor does not believe an order of resale to be an abuse of that discretion, where the price received is only 4.4% of the fair market value, and the defendant would otherwise suffer a substantial deficiency judgment. . . .

The appellants do not directly challenge these findings but do argue about their significance. While conceding the chancellor had the right to determine the market value of the property, the appellants really disagree that the fair market value of the property is $42,500. They point to Looper's testimony that he was prepared to bid only $10,000 or $12,000 based on the nearby youth home and the lack of knowledge concerning the condition of the house. Bohra's testimony was that after the sale he discovered the house was sub-standard to neighboring houses and in need of painting and cleaning. However, the appellants concede that the court may not be clearly wrong in finding the

value of the property to be $42,500 and, therefore, the price was grossly inadequate. They do not challenge the fact that the price shocked the chancellor's conscience.

The appellants argue that they had nothing to do with the apparent representation made by Ward to Graham. If Graham's belief was reasonable, then Madison Guaranty was at fault; if Graham's belief was not reasonable, then it was Graham's fault—in neither case was it the fault of the appellants.

The appellants do not think Ward was guilty of excusable "inadvertance" when he did not arrive at the sale on time. He was negligent. Ward was in town, in time, to attend the sale; he was twice reminded of the sale by secretaries; he had attended sales before and knew they started at noon; and he conceded he was late simply because he forgot.

In four separate decisions we have said that a judicial sale cannot be set aside for an inadequate price *unless* it shocks the conscience of the court. In *Mulkey* v. *White*, 219 Ark. 441, 242 S.W.2d 836 (1951), the chancellor refused to confirm a sale of property for $975. The value of it was $2,000. Other circumstances did exist which prompted the chancellor to set aside the sale. We upheld the chancellor stating:

> At the outset, certain well established holdings may be stated as applicable:

> (1) *Mere inadequacy of price, unless so great as to shock the conscience or amount to evidence of fraud, will not justify the Court in refusing to approve the sale.* . . .

> (2) When great inadequacy of price is shown, the Courts will seize upon slight circumstances to go along with the inadequacy of price and justify a refusal to approve the sale . . . .

> (3) In judicial sales the Court is the vendor, and, in the exercise of a sound judicial discretion, it may confirm or refuse to confirm a sale made under its order. The Courts will not reject a sale and refuse a confirmation for captious reasons, but only in the exercise of sound discretion. The trial court is vested with sound judicial discretion in these matters; and the appellate court, in reviewing the action of

a trial court to see if there has been an abuse of discretion, does not substitute its own decision for that of the trial court, but merely reviews the case to see whether the decision was within the latitude of decisions which a judge or court could make in a case like the one being reviewed. . . . [Italics supplied.]

In three prior cases we have recited almost the exact language regarding an inadequate price. We first stated that principle in *George* v. *Norwood*, 77 Ark. 216, 91 S.W. 557 (1905):

It is equally well settled, here and elsewhere, that a judicial sale will not be set aside on account of mere inadequacy of price, *unless the inadequacy be so gross as to shock the conscience or raise a presumption of fraud or unfairness.* . . . [Italics supplied.]

Next, in *Stevenson* v. *Gault*, 131 Ark. 397, 199 S.W. 112 (1917), we stated:

. . . It is the settled rule of this court that mere inadequacy of price will not justify a court in refusing to approve a sale and depriving the purchaser of the benefit of his purchase *unless the inadequacy is so great as to shock the conscience or amount to evidence of fraud.* [Italics supplied.]

Then in *Doyle* v. *Maxwell*, 155 Ark. 477, 244 S.W. 732 (1922), we said:

. . . It is the settled rule of this court that mere inadequacy of price will not justify a court in refusing to approve a sale and in depriving the purchaser of the benefit of his purchase, *unless the inadequacy is so great as to shock the conscience of the court or to amount to evidence of fraud.* [Italics supplied.]

That principle is a well established principle of law. The two general legal encyclopedias recite it. 47 Am. Jur. 2d, Judicial Sales, § 359 states it this way:

If the inadequacy is so glaring and grossly disproportionate to the real value of the property as to shock the understanding and conscience of an honest and just man, or, as it is sometimes expressed, the judicial conscience, it

may be sufficient to create a presumption of fraud.

50 C.J.S. Judicial Sales § 59 states it this way:

> Although there is some authority to the contrary, ordinarily a judicial sale will not be set aside, even though the price is grossly inadequate, unless the inadequacy is so great as in itself to raise a presumption of fraud, unfairness, or mistake, or to shock the conscience of the court . . .

> It has also been held that it is not the purpose of the law to protect one who seeks to procure valuable property for little or no outlay.

When we have overruled a chancellor's order setting aside a sale, it has been clearly warranted by the facts.

In *Doyle* v. *Maxwell, supra,* the property was sold for $150, and its value was probably $300. We held such a price was not so grossly inadequate as to indicate fraud or shock the conscience of the court. The same was true in *George* v. *Norwood, supra,* where the price was $4,000 and its value was near that.

Conversely, we have reversed chancellors who confirmed sales that should have been set aside. In *Moore* v. *McJudkins,* 136 Ark. 292, 206 S.W. 445 (1918), the chancellor confirmed a sale he should not have confirmed. The sale price was $200, the value at least $1,000. More importantly, the appellants were not notified of the sale. We have emphasized the importance of judicial sales when we have reversed a chancellor who sets aside a sale. In *Doyle* v. *Maxwell, supra,* we said:

> This court has uniformly recognized that it is essential to the interest of those whose property is sold at a judicial sale that prospective purchasers should have full confidence in the safety of the purchase, and that they will not be disturbed for mere inadequacy of price.

We have emphasized the discretion of the chancellor when we have upheld his decision. In *Summars* v. *Wilson, supra,* we said:

> . . . [I]n reviewing the exercise of discretion, the test is whether the ordinary, reasonable, prudent judge, under all the facts and circumstances before him, would have

reached the conclusion that was reached. Viewed in the light of the facts herein, we cannot say that the trial court abused its discretion in refusing to allow Summars to complete his purchase.

Other states and circuits have readily affirmed a trial judge who sets aside a sale because it "shocks the conscience" of the court. *First Nat. Bank* v. *M/V Lightning Power*, 776 F.2d 1258 (5th Cir. 1985); *McCartney* v. *Frost*, 386 A.2d 784 (Md. 1978); *Homecraft Corp.* v. *Fimbres*, 580 P.2d 760 (Ariz. App. 1978); *Johnson* v. *Jefferson Standard Life Insurance Co.*, 429 P.2d 474 (Ariz. App. 1967); *Capozzi* v. *Antonoplos*, 201 A.2d 420 (Pa. 1964). These cases hold a sale may be set aside if the price shocks the conscience of the court. The Arizona decision of *Johnson* v. *Jefferson Standard Life Insurance Co., supra*, is particularly persuasive since the facts and arguments are similar to those in this case. A trial court's order setting aside the sale was upheld. The court said:

> Appellant initially contends that under general equity law, the trial court was powerless to grant relief to appellee because its lawyer was unexcusably negligent in arriving late at the execution sale, and appellant, who did nothing to bring about this condition, was perfectly justified in bidding $5,000.

> The power of a court to set aside an execution sale arises from its inherent power to control its own process. [Citations omitted.] A motion to set aside is addressed to the sound discretion of the court. [Citations omitted.]

> While 'mere inadequacy' of price is generally not sufficient to set aside an execution sale, * * * when the inadequacy is so great as to '* * * shock the conscience of the court,' this is sufficient to authorize the court to set aside the sale and order a new sale. [Citations omitted.] This law has been enunciated by our Supreme Court:

>> '* * * inadequacy of price, when unconscionable, will justify the setting aside of a sheriff's sale on motion.' [Citations omitted.]

> When there is an inadequacy of price which in itself

might not be grounds for setting aside the sale, ' * * * slight additional circumstances or matters of equity * * *' justify the court in setting aside the sale.

There were other circumstances in this case which the chancellor recited as reasons for her action, e.g., the fact that Madison, a creditor, would suffer a severe loss, the lawyer that was "inadvertently late," and the owner was not there to protect his interests. While these are not substantial reasons, they, no doubt, influenced her decision. The appellants argue these are not the kind of circumstances that may be considered. They were not entirely irrelevant, and the chancellor did not abuse her discretion in using these circumstances, together with the shockingly low price, to arrive at her decision. Essentially, the appellants want us to adopt an inflexible rule regarding judicial sales, a rule more suitable to law courts than courts of equity. We decline to overrule the language in our cases and cannot say in this case the chancellor abused her discretion.

Affirmed.