## EMPLOYERS NATIONAL INSURANCE CO. and Ranger Insurance Company *v.* GRANTORS to the Diaz Refinery PRP Committee Site Trust, et al.

92-494                                                855 S.W.2d 937

Supreme Court of Arkansas
Opinion delivered June 28, 1993

*Barber, McCaskill, Amsler, Jones & Hale, P.A.,* by: *M. Stephen Bingham, George B. Hall, Jr., Julia A. Deitz,* and *Phelps Dunbar,* for Employers National Insurance Company.

*Laser, Sharp, Mayes, Bufford & Watts,* by: *Richard Watts* and *Brian Brown,* for Ranger Insurance Company.

*Chisenhall, Nestrud & Julian, P.A.,* by: *Charles R. Nestrud, Jim L. Julian,* and *James F. Goodhart,* for appellees.

GARY D. CORUM, Special Justice. This appeal is brought by Employers National Insurance Company ("Employers") and Ranger Insurance Company ("Ranger") from the chancellor's denial of their motions to intervene in the chancery court lawsuit between the Grantors to the Diaz Refinery PRP Committee Site Trust ("PRP Committee") and Diaz Refinery, Inc. ("Diaz"). The chancery court denied intervention on the basis that the motions were not timely. We find no abuse of discretion in this ruling, and thus affirm.

Employers and Ranger are insurance companies which issued liability policies to Diaz for certain periods during the time it conducted business operations in Arkansas. Diaz was sued by the PRP Committee. Both Employers and Ranger denied coverage. Neither of the insurers offered to defend the lawsuit. After a summary judgment for over six million dollars was entered against Diaz, and after the PRP Committee filed a separate direct action lawsuit against Employers and Ranger, both insurers sought to intervene in the lawsuit between the PRP Committee and Diaz for the purpose of challenging the summary judgment which had been entered against Diaz. The trial court ruled the motions were untimely and denied intervention. Both Employers

and Ranger seek to overturn that ruling and reopen the issue of the summary judgment against Diaz.

■ A threshold question in determining whether intervention should be allowed is whether the application to intervene was made in a timely manner. Indeed, the first three words of Rule 24(a) of the Arkansas Rules of Civil Procedure, which deals with this precise issue, are: "Upon timely application.. . ." A decision as to the timeliness of intervention is a matter within the sound discretion of the trial court and is subject to reversal only where that discretion has been abused. *Polnac-Hartman & Associates* v. *First National Bank*, 292 Ark. 501, 503-504, 731 S.W.2d 202, 203-204 (1987); *Bank of Quitman* v. *Phillips*, 270 Ark. 53, 56-57, 603 S.W.2d 450, 452 (1980).

■ In *Cupples Farms Partnership* v. *Forrest City Prod. Credit Ass'n.*, 310 Ark. 597, 839 S.W.2d 187 (1992), we set forth three factors to be considered in a decision on timeliness. They are: 1) how far the proceedings have progressed; 2) any prejudice to other parties caused by the delay; and 3) the reason for the delay.

■ In order to overturn the chancellor's ruling, appellants must demonstrate that the trial court abused its discretion by making a judgment call which was arbitrary or groundless. *Looper* v. *Madison Guaranty Savings & Loan Ass'n.*, 292 Ark. 225, 228, 729 S.W.2d 156, 157 (1987). The evidence on appeal and all reasonable inferences from that evidence are reviewed in the light most favorable to the appellee, the party which won at the trial level. *Id.* In this case there is ample evidence in the record to support the chancellor's finding that the appellants' motions for intervention were untimely.

From 1974 until June 10, 1988, Diaz operated a solvent recovery, fuel blending and waste brokerage business on a six-acre site located in Diaz, Jackson County, Arkansas. Beginning in 1986 the Arkansas Department of Pollution Control & Ecology ("ADPC&E") conducted investigations of the site and found substantial problems involving the release of hazardous substances into the environment. ADPC&E issued a Notice of Violation to Diaz on November 20, 1986. Diaz agreed to a Consent Administrative Order which ADPC&E entered on July 31, 1987. This order required Diaz to take action to correct

various problems.

On June 7, 1988, ADPC&E filed suit against Diaz in Jackson County Chancellor Court alleging violations of the Arkansas Hazardous Waste Management Act, and for noncompliance with the consent order. ADPC&E obtained a temporary restraining order directing Diaz to comply with the previous consent order. Diaz ceased operations on June 10, 1988.

On March 28, 1989, ADPC&E issued an Administrative Notice of Liability to various entities which were potentially liable for remediation of the Diaz site under the Remedial Action Trust Fund Act ("RATFA"), Ark. Code Ann. § 8-7-501 to 522 (Repl. 1991). Many of the entities which had generated and transported hazardous materials to the site formed an unincorporated association known as the Diaz Refinery PRP Committee. These potentially responsible parties ("PRP's") agreed to a Consent Administrative Order which ADPC&E entered on April 27, 1989. This order required the PRP's to undertake remedial action at the site. The PRP's made contributions to the Diaz Refinery PRP Committee Site Trust to fund this remedial action.

On September 25, 1989, the PRP Committee filed suit in Jackson County Chancery Court against Diaz and six other defendants who were alleged to have been either owners or operators of Diaz. The PRP Committee brought the action pursuant to the contribution provisions of RATFA. These "Grantors," who had funded the cleanup efforts, sought to recover the expenses incurred in the remedial action.

Appellant Employers issued policies of general liability insurance to Diaz for the period July 22, 1983, to October 9, 1986. Appellant Ranger issued excess liability insurance to Diaz for the period June 30, 1981, to June 30, 1982. By letters dated April 4, 1990, and April 25, 1990, the PRP Committee informed Employers and Ranger of the pendency of the lawsuit against Diaz and informed these insurers that, if the PRP Committee was successful in obtaining a judgment against Diaz, it would seek to collect this judgment from these insurers. Employers advised Diaz its policies provided no coverage. Ranger also notified Diaz of various coverage defenses under its excess policy. Neither appellant offered to assume the defense for Diaz, nor did they undertake any other participation in the case.

On December 5, 1990, the PRP Committee filed a motion for summary judgment against Diaz. Diaz filed no written response to the motion and presented no argument at the hearing on the motion. On April 2, 1991, the chancellor granted the motion and awarded judgment against Diaz in the amount of $6,574,973.05; which was the total cost expended to that date by the PRP Committee for remediation efforts under the consent order with ADPC&E.

On April 17, 1991, the PRP Committee advised appellants that summary judgment had been rendered against Diaz holding it liable for 100% of the remediation costs expended by the PRP Committee. On May 17, 1991, the PRP Committee advised appellants that the judgment remained unsatisfied and that it would institute a direct action suit against them pursuant to Ark. Code Ann. § 23-89-101(b) (Repl. 1991).

On June 11, 1991, there was a meeting between representatives of the PRP Committee and various insurers of Diaz. On July 3, 1991, the PRP Committee filed a separate lawsuit against Employers and Ranger in Jackson County Circuit Court, alleging that the insurance policies provided coverage for the contribution claim against Diaz. The Committee seeks to collect the amount of its chancery court judgment against Diaz from these companies. That case is pending, and both insurers are defending on the basis that they provided no coverage applicable to the claim against Diaz.

It was not until September 3 and September 5, 1991, that appellants filed motions to intervene in the chancery court lawsuit between the PRP Committee and Diaz. In these motions appellants asked the chancery court to reconsider its summary judgment against Diaz, or in the alternative, to allow them to intervene in order to undertake an appeal of that judgment.

The chancellor conducted a hearing on October 16, 1991, and considered the briefs, evidence, and arguments presented in support of the motions to intervene. On October 29, 1991, the chancellor denied the motions for intervention on the basis that they were untimely. The summary judgment against Diaz was declared final on the same date.

It is clear that both appellants had knowledge of the lawsuit

against Diaz in April, 1990, some seventeen months before they filed their motions for intervention. They knew the PRP Committee intended to seek recovery under the policies they had issued to Diaz if the Committee was successful in the litigation. Each of the appellants denied coverage to Diaz for the claims asserted. Neither of them offered to defend Diaz nor did they seek any other form of participation in the litigation. Both appellants maintained this position until September of 1991, five months after summary judgment had been granted against Diaz and approximately four and one-half months after they were notified of the summary judgment by the PRP Committee. By that time, the lawsuit against Diaz was two years old and, with respect to Diaz, had been completed.

This appeal challenges the denial of intervention and further challenges the chancery court judgment, which allocated 100% of the liability for remediation cost to Diaz. Appellants contend the judgment is contrary to the provisions of RATFA which authorize contribution claims among potentially responsible parties. Since we find the intervention issue to be dispositive of the case, we do not reach the contribution issue.

In challenging the chancellor's determination that the effort to intervene was untimely, appellants argue that they could not have intervened in the litigation prior to the time that Diaz "abandoned" its defense on the summary judgment issue. They contend that the timeliness of their efforts should be judged from April 17, 1991 (the date they were notified of the entry of the summary judgment) or from June 11, 1991 (the date of the meeting in which they allege the "abandonment" of the defense by Diaz was "confirmed" to them) to September, 1991, when they filed motions to intervene.

Appellants base much of their argument on the concept of "standing" to intervene in ongoing litigation. They contend they had no interest to justify formal intervention so long as Diaz was actively defending the claim asserted by the PRP Committee. They argue that once Diaz ceased its defense efforts an interest was created which triggered their right to intervene. Appellants' focus on the issue of whether, and when, they had "standing" to intervene in the lawsuit, however, misses the point which we find dispositive in this case. We do not consider formal intervention to

be the only means by which these appellants could safeguard any interest they may have had in this case.

A liability insurer with potential coverage for claims asserted against a defendant often assumes responsibility for the conduct of the defense of those claims. In fact, most liability policies give the insurer the right to conduct and control the defense of claims. An insurance company which questions whether its coverage is applicable may assume the defense under a reservation of rights agreement with its insured. Sometimes an insurer will institute a declaratory judgment action to resolve the issue of coverage; either with or without seeking a stay of the original action. Even if direct participation is not chosen as an option, the progress of litigation can certainly be monitored. In this case the record reveals that appellants simply denied coverage and left Diaz to deal with the claims as best it could.

■ Appellants concede they had adequate notice of the claims against Diaz and the PRP Committee's intention to pursue a recovery under their policies. Faced with this knowledge, they denied coverage and determined not to participate in the conduct of the defense in this case. They thereby assumed the risk that Diaz might defend poorly, or not at all. There is no evidence that they took any affirmative steps to monitor the progress of the litigation. Their knowledge of the outcome which was unfavorable to Diaz came from additional notices sent to them by the PRP Committee. We are unwilling to adopt, as a principle of law, the proposition that an insurer may decline to participate in ongoing litigation and ignore the progress of that litigation, yet reserve a right to later challenge the outcome on the ground that the claim was not well defended.

Appellants contended at oral argument that an insurer who denies coverage and declines to defend a claim against an insured nonetheless has a right to depend on the party it refused to assist to protect any contingent interest the company might have in that litigation. No authority is cited for this proposition and we decline to adopt any such rule.

Our view of the case does not require us to determine when formal intervention could first have been sought, or to determine the precise date relied on by the chancellor in ruling that the attempt to intervene was untimely. Whether that period was

seventeen months, five months, or four and one-half months, the record supports the chancellor's ruling that it was not timely.

The key to our decision is found in the principle that, whatever form of participation these appellants desired to have in the litigation, they were required to act in a timely fashion. The objective of our rules of procedure is the orderly and efficient resolution of disputes. Rule 1 of our Arkansas Rules of Civil Procedure provides that the rules shall be construed "to secure the just, speedy and inexpensive determination of every action." In order to accomplish this mission, trial courts are accorded discretion, within reasonable limits, to require timely action and to deny efforts which would frustrate the achievement of those goals.

It is clear that these appellants wanted nothing to do with this lawsuit until after a result was achieved. Only after a passage of months and the institution of a separate direct action against them did they seek to reopen the original case. They now want to present a defense to claims which have been decided. The chancellor deemed the request untimely. On this record, we find no abuse of discretion. The ruling is affirmed.

Affirmed.

Special Justice RICHARD L. MAYS joins in this opinion.

DUDLEY, NEWBERN and GLAZE, JJ., not participating.