ARKANSAS BEST CORPORATION v. GENERAL
ELECTRIC CAPITAL CORPORATION, Riverside Furniture
Corporation, Riverside Holdings Inc., M. R. Realty
Associates, L.P., McKane Robbins & Co., David McKane,
Individually, and Peter Robbins, Individually

93-399                                                    878 S.W.2d 708

Supreme Court of Arkansas
Opinion delivered June 6, 1994

240

*Jones, Gilbreath, Jackson & Moll*, by: *Robert L. Jones, Jr.* and *Randolph Jackson*; and *Hughes & Luce, L.C.P.*, by: *Clifton T. Hutchinson, Bobby M. Rubarts*, and *Holly A. Schymik*, for appellant.

*Daily, West, Core, Coffman & Canfield*, by: *Ben Core* and *Robert Bishop*; and *Latham & Watkins*, by: *James E. Brandt* and *Louise Zeitzew* for appellees.

DAVID NEWBERN, Justice. Arkansas Best Corporation (ABC) appeals from the order of a Chancellor refusing to unseal a settlement agreement and resulting judgment. The agreement was entered by the parties to a lawsuit before the Chancellor and sealed at their request. In the order sealing the agreement, the Chancellor stated conditions upon which the settlement could be unsealed, in which case it would be incorporated as the findings of fact in an agreed judgment signed by the Chancellor. It was error to permit the document to be sealed, thus we reverse and remand.

In 1989, ABC entered an agreement to sell the stock of its subsidiary, Riverside Corporation (Riverside), to M. R. Realty, a company formed by David McKane and Peter Robbins. To finance the purchase, McKane and Robbins obtained a loan from General Electric Capital Corporation (GECC). McKane and Robbins contend that after the purchase they discovered the amount of

money needed annually to fund Riverside's employee pension plan had been understated during negotiations for the sale. McKane and Robbins believed the need would be $150,000 to $200,000; however, the requirement was approximately $750,000. In August 1990 McKane and Robbins sued ABC in a United States District Court in New York alleging, among other things, fraud and breach of contract.

In April 1991 GECC filed suit against McKane and Robbins in Sebastian Chancery Court alleging they had breached loan covenants by diverting $2.4 million dollars from Riverside's cash accounts for personal use. On October 1, 1991, the Chancellor entered an agreed judgment. The judgment stated the parties had entered a settlement agreement which the Court had examined in *camera*. The settlement agreement was in conjunction with an "other judgment" which provided for payment of a specified sum of money. The agreed judgment also stated the settlement agreement contained admitted facts that formed the basis of liability in the agreed judgment and the "other judgment."

The agreed judgment also provided the settlement agreement would be sealed with the court clerk's file and could only be unsealed after a hearing on a motion of a party to the suit, or by filing of bankruptcy by McKane or Robbins individually or by their company. The agreed judgment also contained the following two paragraphs:

(5) In the event that the Settlement Agreement is unsealed under the terms set forth above, the admitted facts contained in the Settlement Agreement will become a part of this Agreed Judgment and the Other Judgment as findings of fact by this Court;

(6) This Agreed Judgment and the Other Judgment are being entered simultaneously and together constitute the final agreed judgment of the parties.

In 1992 ABC moved the United States District Court in New York to compel discovery of the settlement agreement between McKane and Robbins and GECC. ABC says it needs the information because the money McKane and Robbins may have been found liable for diverting to personal use could be shown to be that which should have been put in the pension fund. In June

1992 a United States Magistrate declined to compel discovery but instructed ABC to apply to the Chancellor to unseal the document.

ABC filed its application to unseal in the Sebastian Chancery Court, and a hearing was held. On December 10, 1992, the Chancellor denied ABC's request.

## 1. Procedure

### a. Standing and timeliness

█ ABC was not a party to the litigation in which it filed the motion to unseal the settlement agreement. As the Alabama Supreme Court held in *Holland* v. *Eads*, 614 So.2d 1012 (Ala. 1993), a motion to intervene is the proper means of asserting the public's right to open court records. No motion to intervene was made in this case.

The parties have not raised any question about ABC's standing in the matter.

██ Despite these lapses, we have no hesitancy in treating this as a case in which there was a post-judgment motion to intervene for the purpose of unsealing the records. Arkansas R. Civ. P. 24 permits "timely" intervention. No time limit is stated. The timeliness of intervention is within the discretion of the Trial Court, and permitting intervention will not be considered error due to untimeliness unless there has been an abuse of discretion. *See Bank of Quitman* v. *Phillips*, 270 Ark. 53, 603 S.W.2d 450 (Ark. App. 1980). When there are "unusual and compelling" circumstances, we permit intervention even after a final judgment has been entered. *UHS of Arkansas, Inc.* v. *City of Sherwood*, 296 Ark. 97, 752 S.W.2d 36 (1988). Cf. *Beckman Industries, Inc.* v. *International Ins. Co.*, 966 F.2d 470 (9th Cir. 1992), in which the "compelling need" and "extraordinary circumstances" tests were rejected in favor of allowing post-judgment intervention to seek modification of a protective discovery order "to meet the reasonable needs of other parties in other litigation."

█ The circumstances in this case are indeed "unusual and compelling." ABC sought to discover information about the litigation between McKane and Robbins in a federal court which in turn referred them to the Sebastian Chancery Court. In ordi-

nary or "usual" circumstances, the information would be a matter of public record. That, coupled with the public's interest in open judicial proceedings, which we regard as "compelling," causes us to conclude the attempt to intervene was not untimely.

### b. Final order

■■ Again, neither party has challenged the finality of the order being considered, but when we have doubts we raise the issue as it is jurisdictional. *Widmer* v. *Tuohey*, 297 Ark. 85, 759 S.W.2d 562 (1988); *Roy* v. *International Multifoods Corp.*, 268 Ark. 958, 597 S.W.2d 129 (1980). If the ruling on the motion to unseal the settlement agreement were merely a motion in the course of litigation not yet final, we would dismiss the appeal. Here, however, the litigation is final. A judgment has been entered. Although the ruling on the motion we treat as one to intervene came after the final judgment, it is a part of the litigation which resulted in that final determination and is a part of the judgment, thus we consider it final and appealable pursuant to Ark. R. App. P. 2(a)1.

### c. Discovery

This problem began with a discovery request in the federal court in New York, but the issue before us is not a discovery issue. The federal magistrate declined to order McKane and Robbins to produce the sealed settlement agreement but deferred to the Chancellor. The parties' briefs frequently refer to Ark. R. Civ. P. 26(c) which deals with protective orders restricting discovery requests. The rule does not address the issue presented. The settlement agreement was sealed pursuant to a judgment. The order sealing the settlement agreement does not refer to Rule 26(c), nor was the agreement subject to a discovery request at the time it was sealed. Instead, the Chancellor's action requires us to determine under what authority, if any, a trial court may seal a settlement agreement which is apparently part of, or the basis of, an "other judgment" which also lies hidden from the public view.

### d. Burden of persuasion

■ GECC and McKane and Robbins suggest that ABC bears a greater burden in convincing a court that the record should be unsealed than they were required to sustain in convincing the

Chancellor to seal the records. We disagree. Although the decision we review is that of declining to unseal the records, the issue is whether the records should have been sealed in the first place. It was treated thus in *Holland* v. *Eads, supra,* and in *Zuckerman* v. *Piper Pools,* 607 A.2d 1027 (N.J. Super., A.D., 1992). The latter case was one in which an unsealing order was sought, and the New Jersey Superior Court, Appellate Division, considered only the question whether the record should have been sealed. Considering the motion to unseal, the Court said, and we agree, "One who seeks to overcome the expectation of access bears the burden of establishing the requisite important state interest." 607 A.2d at 1029.

## 2. The right of access

In *Nixon* v. *Warner Communications, Inc.,* 435 U.S. 589 (1978), the Supreme Court addressed the common law right of access to court proceedings and records. While it is not an absolute right, the Court stated, "It is clear the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." 435 U.S. at 597. The Court conceded, however, "It is difficult to distill from the relatively few judicial decisions a comprehensive definition of what is referred to as the common-law right of access or to identify all factors to be weighed in determining whether access is appropriate." *Id.,* at 599.

In *Arkansas Dep't of Human Services* v. *Hardy,* 316 Ark. 119, 871 S.W.2d 352 (1994), we addressed the public's right of access to a court's final order. The Department of Human Services brought a paternity suit. After a hearing, the Chancellor filed a final order containing his ruling and then filed a second order stating the first order was sealed. We found the Chancellor erred in sealing the order, stating:

> The foregoing issue came about because the chancellor sealed the final order, and, contrary to the arguments of both parties, we know of no authority for the sealing of a final order. One of the basic principles of a democracy is the people have a right to know what is done in their courts. Correlative of this principle is the vital function of the press to subject the judicial process to extensive public

scrutiny and comment. *See Arkansas Television Co. v. Tedder*, 281 Ark. 152, 662 S.W.2d 174 (1983). Secret final orders could defeat this synergy of the peoples' right and the press's function, especially in cases in which the State is a party, as in this case. In *Sheppard* v. *Maxwell*, 384 U.S. 333 (1966), the Supreme Court wrote that when public court business is conducted in private, it becomes impossible to expose corruption, incompetence, inefficiency, prejudice, and favoritism. For this reason traditional Anglo-American jurisprudence distrusts secrecy in judicial proceedings and favors a policy of maximum public access to proceedings and records of judicial tribunals. We have no hesitancy in holding the final order in this case should not have been sealed.

■    It is difficult to distinguish the *Hardy* case from this one. The pronouncements we made in the *Hardy* case with respect to the right of access are based on cases from other jurisdictions which had declared and emphasized the common law right of the public to access to court proceedings, and they are relevant to this decision. The "other judgment" lurking in the same shadows as the settlement agreement is apparently a significant decision by the Trial Court. While it may not be a "final order" like the one sealed in the *Hardy* case, the same rationale applies.

■    A review of cases from other jurisdictions indicates support for a strong presumption in favor of the right of access. *See Nixon* v. *Warner Communications, Inc., supra; Bank of America Nat. Trust and Sav. Assn.* v. *Hotel Rittenhouse Associates*, 800 F.2d 339 (3rd Cir. 1986); *Palmieri* v. *State of N.Y.*, 779 F.2d 861 (2nd Cir. 1985); *Holland* v. *Eads, supra; R.W.* v. *Hampe*, M.D., 626 A.2d 1218 (Pa. Super. 1993); *In re Marriage of Johnson*, 598 N.E. 406 (Ill. App. 4 Dist. 1992); *Zuckerman* v. *Piper Pools, supra.* Each of these cases, however, also states the presumption is not absolute. In the *Hardy* case we too recognized "the inherent authority of a trial court to issue appropriate protective orders to control court records, and, thus, the right to inspect public records is not absolute."

The Supreme Court's opinion in the *Nixon* case held the right of access was a matter subject to the Trial Court's discretion based on the facts and circumstances. Other courts have not

expressed the same degree of deference. *See, e.g., Bank of America Nat. Trust and Sav. Assn.* v. *Hotel Rittenhouse Associates, supra,; United States* v. *Criden*, 648 F.2d 814 (3rd Cir. 1981).

A trial court's discretion to invoke inherent authority denying access to judicial documents must be balanced against the strong presumption in favor of access, but in our view, entrance to a trial court's discretion to secret its actions must lie beyond a formidable threshold.

In the *Hardy* case we noted several statutes which provide for closing judicial proceedings under certain circumstances. *See, e.g.*, Ark. Code Ann. § 4-75-605 (Repl. 1991)(suits involving trade secrets); Ark. Code Ann. § 9-9-217 (Repl. 1993)(adoption proceedings records shall be closed, only to be open as provided by law or for good cause); Ark. Code Ann. § 9-27-325 (Repl. 1993)(juvenile proceedings); Ark. Code Ann. § 16-13-318 (1987)(domestic relation cases). In addition, Ark. R. Sup. Ct. 6-3 allows for anonymity in certain appellate proceedings, and as discussed above, Ark. R. Civ. P. 26(c) allows a trial court to enter protective orders related to discovery requests. These statutes and rules provide a range of subjects in which a trial court can seal judicial documents or proceedings. The range is similar to the limitations of access to judicial proceedings in other jurisdictions.

In *Holland* v. *Eads, supra*, the Alabama Supreme Court, noting an absence of similar rules and statutes in that State, created a guideline for sealing court records. It held that a trial court can only seal court records upon a written finding that clear and convincing evidence indicates the document sought to be sealed (1) contains a trade secret, (2) is a matter of national security, (3) promotes scandal or defamation, (4) pertains wholly to private family matters, such as divorce, (5) poses a serious threat of harassment, exploitation or other harm to the parties to the actions, or (6) poses the potential for harm to third persons not parties to the litigation.

A less structured approach was taken in *In re Marriage of Johnson, supra*, in which the Illinois appellate court stated, "Once documents are subject to the right of access, only a compelling reason, accompanied by specific factual findings, can justify

keeping them from public view." 598 N.E.2d at 411. We are persuaded to adopt an approach similar to that taken in *R.W.* v. *Hampe, M.D., supra,* in which a Pennsylvania Superior Court refused a plaintiff's request to seal court records containing her name in a malpractice suit against her psychiatrist. The Court agreed the information which would be produced in a trial of the plaintiff's complaint would indeed be embarrassing to her.

The Court reviewed Pennsylvania's statutes and court rules that provided for sealing court records and concluded that the issue presented was clearly distinguishable from the limited circumstances in which a trial court could seal court records. We agree with the sense of the opinion that, beyond the instances described in the statutes or rules, the "inherent" authority of a trial court to seal court records must be very limited in view of the strong common law right of access.

ABC argues the information contained in the settlement between GECC and McKane and Robbins is relevant and necessary to the New York litigation. We regard that argument as unnecessary. The right of access belongs to the public, not just the parties to a lawsuit. More important, we are not persuaded by the counter-argument that GECC and McKane and Robbins have relied on the sealing order in reaching their settlement agreement. We agree with the statement of the United States Court of Appeals for the Third Circuit in *Bank of America Nat. Trust and Sav. Assn.* v. *Hotel Rittenhouse Associates, supra,* that mere encouragement of settlement is not a sufficient basis to overcome the public's right of access.

If the parties to a law suit wish to enter an agreement and keep it secret, they may do so. All they need do is file a motion to dismiss litigation between them once the settlement of it is agreed upon. It remains their private business. If, however, they wish to make the settlement a court record and seek the imprimatur of a court, as was done in this case, it becomes the public's business.

We do not close the door to the possibility of sealing court records in instances other than those provided by statute or rule of court. We do, however, suggest that we will look long and hard at any other sealing, and we require a trial court enter-

ing such an order to spell out in some detail the reasons for sealing the record.

During oral argument of this case the question of remand for a redetermination by the Chancellor was raised, the reason being that the Chancellor did not have the advantage of our opinion in the *Hardy* case when deciding to seal the documents. Neither party has asked for such a remand, and neither responded favorably to the suggestion during the oral argument. As shown in the citations to the *Nixon* and other cases cited above, there is nothing new about the strong right of public access to court records. Nor have we been cited to any reason in support of the sealing which we would have found acceptable had it been stated by the Chancellor. We therefore decline to remand the case other than for an order consistent with this opinion.

Reversed and remanded.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting. My primary reason for dissenting is that Arkansas Best Corporation has no standing in this lawsuit. ABC failed to file a required motion to intervene in this cause, and while the trial court did not reject ABC the relief it asked based upon ABC's lack of standing, this court will sustain a trial court's ruling if it reached the right result, even though it announced the wrong reason. *Smackover State Bank* v. *Oswalt*, 307 Ark. 432, 821 S.W.2d 757 (1991). In addition, we have said that on appeal we review a chancery case de novo, and if a chancellor's decision can be sustained on other grounds, it will be done. *O'Neal* v. *Ellison*, 266 Ark. 702, 587 S.W.2d 580 (1979); *Morgan* v. *Downs*, 245 Ark. 328, 432 S.W.2d 454 (1968).

Arkansas Best was never a party to this litigation, and the parties to this cause of action settled their dispute and, by consent protective order of the Sebastian County Chancery Court, a judgment along with the parties' settlement agreement was sealed until further order by the court. This occurred on October 1, 1991. Although Arkansas Best was well aware of this lawsuit as early as May 16, 1991, it made no attempt to intervene in it until December 10, 1992, after the parties settled this dispute. In this respect, ABC by letter dated May 16, 1991 to the United States District Court in the New York lawsuit notified that court of this

Arkansas litigation and its relevance to ABC's then pending motion to transfer or dismiss the New York litigation. Even so, for whatever reason, ABC chose neither to intervene in nor to monitor this Arkansas lawsuit.

While the majority court reads ARCP Rule 24 so as to allow Arkansas Best to intervene in this matter, I fail to see how that rule could possibly permit such an intervention fourteen months after judgment has been entered. *See also* ARCP Rule 60. As pointed out above, ABC had previously expressed to the New York court that its interests in the lawsuit could be affected by this Arkansas litigation, and accordingly, it had ample opportunity to intervene in this cause long before entry of the parties' Arkansas judgment. At the least, Arkansas Best should have monitored this Arkansas litigation so as to exercise its rights in a timely manner.

This court has held repeatedly that timeliness of intervention is a matter within the discretion of the trial court and is subject to reversal only where that discretion has been abused; such Arkansas rule is buttressed, as well, by authority developed in the federal courts' interpretation of Fed. R. Civ. P. 24. *Polnac-Hartman & Associates* v. *First National Bank*, 292 Ark. 501, 731 S.W.2d 202 (1987); *see also* 3B *Moore's Federal Practice*, 24.3 (2d ed. 1987). Predictably, this court on review has also repeatedly affirmed trial court rulings bearing on Rule 24 intervention issues. *Id., Carton* v. *Missouri Pac. R.R.,* 315 Ark. 5, 865 S.W.2d 635 (1993); *Employers Nat'l Insurance Co.* v. *Grantors,* 313 Ark. 645, 855 S.W.2d 937 (1993); *Cupples Farms Partnership* v. *Forrest City Prod. Credit Ass'n,* 310 Ark. 597, 839 S.W.2d 187 (1992); *Looper* v. *Madison Guaranty Savings & Loan Ass'n,* 292 Ark. 225, 729 S.W.2d 156 (1987); *Bank of Quitman* v. *Phillips,* 270 Ark. 53, 603 S.W.2d 450 (1980). In *Bank of Quitman,* the court noted the considerable reluctance of courts to allow intervention after the action has gone to judgment, absent extraordinary and unusual circumstances. 270 Ark. at 56, 603 S.W.2d at 452; *see also Polnac-Hartman & Associates,* 292 Ark. 503, 731 S.W.2d 202. Stated differently, this court noted a post-judgment intervention will be allowed only upon a strong showing of entitlement or a demonstration of unusual and compelling circumstances. *UHS of Ark. Inc.* v. *City of Sherwood,* 296 Ark. 94, 752 S.W.2d 36 (1988) (where filing and entering of judgment had been expedited [judgment

was entered only twenty-two days after the city filed its complaint] this court determined that the intervenor, which filed its motion on the twenty-third day, demonstrated as a matter of right it was entitled to intervene to protect its interests).

In sum, ABC failed to demonstrate unusual or compelling reasons for intervening in this case. To the contrary, ABC was remarkably fourteen months late in asserting its interests. Certainly, ABC's tardiness was reason enough for the Arkansas trial court to refuse ABC's intervention. For this reason, I would affirm the chancellor's ruling denying ABC's request to unseal the parties' settlement agreement entered in this cause.