Greg Harton, Editor Northwest Arkansas Times
212 N. East Avenue Fayetteville, Arkansas 72701
Dear Mr. Harton:
I am writing in response to your request, made pursuant to A.C.A. § 25-19-105(c)(3)(B)(i), which is contained within the Arkansas Freedom of Information Act (the "FOIA"), A.C.A. §§ 25-19-101 — 109 (Repl. 2002 and Supp. 2009), for my opinion regarding the provisional decision of the custodian of records of the Washington County Sheriff's Office to withhold from disclosure various records reflecting disciplinary actions relating to two employees of the Sheriff's office.
Your request follows in the wake of a similar request addressed in Op. Att'y Gen. No. 2011-078, in which I reviewed the custodian's provisional decisions with regard to a variety of records, including those relating to the two individuals whose disciplinary records are now at issue. Attached to the previous request were various records, none of which related to the disposition of a federal lawsuit that reportedly involved the two subjects of your request. In my previous opinion, in response to the custodian's request for my review of his provisional opinion to withhold the records, I offered the following analysis:
 You . . . report that records exist pertaining to two individuals who were terminated by the sheriff following an investigation. These individuals were named in the written FOIA request you have attached to your submission. However, you have provided me no records relating to these individuals' dismissal. These individuals were apparently the named plaintiffs in the highly publicized lawsuit you reference in your request. Finally, you report that [a]s part of *Page 2 
the Settlement Agreement of the lawsuit, the terminations have been changed to reflect resignations rather than discharge.
 Not having seen the records relating to these individuals, I am unable to apply the test set forth above.[1] The custodian will personally need to undertake this review.
You indicate that on June 20, 2011 — four days after the issuance of my previous opinion — a reporter from your newspaper made an FOIA request to the Washington County Sheriffs Office seeking to examine records related to the terminations of the two above referenced employees. You further indicate that on May 6, 2011, a federal magistrate had approved a settlement agreement negotiated among the parties to the lawsuit referenced in my previous opinion. You summarize the pertinent provisions of this agreement as follows:
 As part of the verbal portion of proceedings, all parties agreed to a non-disparagement clause that barred further comment by the parties of the lawsuit regarding any of the other parties of the lawsuit. It also included the following language, hashed out by the county and the plaintiffs, as stated by [the magistrate] in the recordings[2]:
 • The plaintiffs['] employment records will be redacted to show that they resigned, not that they were terminated.
 • If any inquiries are made with the sheriffs department, the only thing that may be said are the dates of plaintiffs' employment, their duties, their position and the date of their resignations. *Page 3 
As custodian of the records, the Washington County Attorney reportedly rejected your reporter's request on June 21, 2011, citing as his reason that "we cannot release it without being in violation of the settlement agreement."
RESPONSE
Because of the lack of clarity in the law, and the fact that I am not aware of the terms and the scope of the court's order, I am unable to assess whether the custodian was correct in his determination that to produce the requested documents would run afoul of a court order that the documents be withheld.
DISCUSSION
As I suggested in my initial opinion regarding this matter, I cannot assess the propriety of the custodian's decision without knowing the terms and the scope of the settlement agreement and the court's order approving the settlement.
As I noted in my previous opinion, one of the requisite elements supporting the release of employee evaluations or job performance records is that there has been a "final administrative resolution of any suspension or termination proceeding. . . ."[3] This office has opined on various occasions that the mere availability of a judicial appeal following a final administrative action is in and of itself insufficient to foreclose disclosure under the FOIA, given that the triggering event for purposes of this prong is a final decision-making step taken by the employing entity.[4]
However, at issue here is the separate exemption set forth in A.C.A. § 29-15-105(b)(8) (Supp. 2009), which exempts from inspection "[d]ocuments that are protected from disclosure by order or rule of court."
Before addressing this issue directly, I must stress the broad liberality of the FOIA in favor of the disclosure of documents. The Arkansas Supreme Court has offered the following general observation about the application of the FOIA: *Page 4 
 Whether a statute should be construed narrowly or broadly depends upon the interests with which the statute deals . . . [and] statutes enacted for the public benefit are to be interpreted most favorably to the public. . . . [T]he Freedom of Information Act was passed wholly in the public interest and is to be liberally interpreted to the end that its praiseworthy purposes may be achieved.[5]
The court has maintained this "liberal construction" of the FOIA.[6] Moreover, the court has consistently held that any exemption from disclosure under the FOIA is to be narrowly construed.[7] Thus, when the scope of an exemption is unclear or ambiguous, the court will interpret it in a manner that favors disclosure.[8]
Bearing in mind these principles of construction, the question in this particular instance is whether the federal court ruling approving the settlement agreement in fact bars what would have been a required disclosure of the underlying documents under the FOIA absent the order. Under subsection 25-19-105(b)(8), records are exempt from disclosure in response to an FOIA request if the records "are protected from disclosure by order or rule of court." The Arkansas Supreme Court has made clear that this exemption applies both to "judicial records" (e.g. motions, pleadings, affidavits, etc.)[9] and to "non-judicial records" (i.e. records not on file with the court; e.g. an attorney's working papers that have not been filed with the court).[10] *Page 5 
The Court has been very clear about the test for the release of certain kinds of judicial records. For example, if a court is persuaded that judicial records must be closed in order to protect a defendant's constitutional right, the court must make a series of very specific findings. Specifically, the Arkansas Supreme Court requires (1) that trial court's clearly and unambiguously state that the records are being closed for purposes of the FOIA; and (2) that trial courts make a specific finding of fact (3) on the record (4) that (a) there is a "substantial probability" that the defendant's constitutional right will be damaged; and (b) that alternatives to disclosure would be inadequate to protect that right.[11]
While the Court has not been nearly as clear about the test governing closure of non-judicial records under subsection 25-19-105(b)(8), three things are clear. If a court closes records, (1) it must do so clearly and unambiguously;[12]
and (2) it must "spell out in some detail the reasons for sealing the record."[13] Finally, (3) courts cannot create exemptions to the FOIA by smuggling them in under a protective order.[14]
The uncertainty, however, is about what "reasons" a court must spell out. There is some argument that the multi-part test applicable to judicial records — or something like it — must be satisfied with respect to non-judicial records. But there has been no legislative or judicial clarity on that point. Absent such clarification, I cannot venture to create such a standard or read one into the FOIA.
By way of guidance, I will note that the parties to litigation that occurs after a final administrative determination has issued cannot simply avoid the dictates of the FOIA by agreeing among themselves that the final determination was actually something other than it was. The operative question is whether disclosure of the documents would run afoul of an express court order that the records be closed. *Page 6 
Subsection 25-19-105(b)(8) clearly contemplates that, under appropriate circumstances, a court may order that records be withheld from disclosure. This conclusion is all that I intended in suggesting in my previous opinion that a federal court's ruling regarding what documents are subject to disclosure should be accorded "substantial deference." It is the custodian's role, after considering the precise scope of the court's ruling and all other attendant facts, to determine whether he is in fact foreclosed from making the documents available for inspection.
To summarize, because I am not in possession of the settlement agreement and the court's order relating to that agreement, I am unable under the circumstances to determine the propriety of the custodian's decision to withhold the requested records. I can only observe that the court's order must be explicit in declaring the records unavailable for inspection and the reasons supporting such a finding. In the event that there is any question regarding the court's intention, given the liberal standard of disclosure set forth in the FOIA and the applicable case law, that question should either be submitted to the court for clarification or else resolved in favor of disclosure.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM/JHD:cyh
[1] I will not here again set forth the applicable standard to be applied in determining whether to release employee evaluations or job performance records of the sort at issue. Rather, I will simply refer you to my extensive discussion of this standard, which is set forth in the attached Opinion 2011-078.
[2] As regards the recordings referenced in your request, I have no way of determining what was their legal import. This office was unable to access the exchanges reportedly included on the tape you provided.
[3] A.C.A. § 25-19-105(c)(1) (Supp. 2009).
[4] See, e.g., Op. Att'y Gen. Nos. 2008-167, 2002-326 n. 1, 95-204; 94-306, and 91-003;see also John J. Watkins Richard J. Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT, (Arkansas Law Press, 5th ed. 2009), at 212.
[5] Arkansas Gazette Co. v. Southern State College,273 Ark. 248, 250, 620 S.W.2d 258 (1981) (quoting Laman v.McCord, 245 Ark. 401, 432 S.W.2d 753 (1968)).
[6] See, e.g., Ark. Dept. of Fin. Admin. v. PharmacyAssocs., 333 Ark. 451, 970 S.W.2d 217 (1998); Ark. Dept. ofHealth v. Westark Christian Action,322 Ark. 440, 910 S.W.2d 199 (1995).
[7] See, e.g., Pharmacy Assocs., supra; Stilley v.McBride, 332 Ark. 306, 965 S.W.2d 125 (1998); Westark ChristianAction, supra; Byrne v. Eagle,319 Ark. 587, 892 S.W.2d 487 (1995); Johninson v. Stodola,316 Ark. 423, 872 S.W.2d 374 (1994); Legislative Joint AuditingComm. v. Woosley, 291 Ark. 89, 722 S.W.2d 581 (1987).
[8] Young v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992);Ragland v. Yeargan, 288 Ark. 81, 702 S.W.2d 23 (1986).
[9] E.g. Arkansas Newspaper, Inc. v. Patterson,281 Ark. 213, 662 S.W.2d 826 (1984).
[10] E.g. City of Fayetteville v. Edmark,304 Ark. 179, 801 S.W.2d 275 (1990).
[11] See, e.g., Patterson,281 Ark. 213; Watkins Peltz, supra note 4, at 156.
[12] See, e.g., Watkins Peltz, supra note 4, at 154;cf. cases cited in note 8.
[13] See Arkansas Best Corp. v. General Elec. CapitalCorp., 317 Ark. 238, 247-48, 878 S.W.2d 708, 712-13 (1994).
[14] See also Laman v. McCord,245 Ark. 401, 406, 432 S.W.2d 753, 756 (1968); Watkins Peltz,supra note 4, at 160. *Page 1